205 So.2d 797 (1967)
Claude ARNOLD, Plaintiff,
v.
STUPP CORPORATION and the Travelers Indemnity Company, Defendants, Third-Party Plaintiffs, Appellants,
v.
CHARLES CARTER & CO., Inc. and Manhattan Fire & Marine Insurance Company, Third-Party Defendants, Appellees.
No. 7183.
Court of Appeal of Louisiana, First Circuit.
December 19, 1967.
Rehearing Denied January 29, 1968.
Writ Refused March 8, 1968.
*798 Frank M. Coates, Jr., of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for Stupp Corporation and The Travelers Indemnity Co.
John V. Parker, of Sanders, Miller, Downing & Kean, Baton Rouge, for Charles Carter & Co., Inc., third party defendants-appellees.
Before LOTTINGER, SARTAIN and ELLIS, JJ.
SARTAIN, Judge.
This appeal is by third party plaintiffs, Stupp Corporation (Stupp) and the Travelers Indemnity Company (appellants) following a decision by the district judge which sustained a peremptory exception of no cause of action filed by third party defendants, Charles Carter & Company, Inc., (Carter) and Manhattan Fire & Marine Insurance Company (appellees).
The instant controversy grows out of a suit instituted by Claude Arnold, an employee of Carter, against appellants for personal injuries sustained by Arnold at Stupp's plant in Baton Rouge. Arnold's petition alleges that on the date of the accident, he fell from a ladder belonging to Stupp and that Stupp's negligence was the sole and proximate cause of the accident and his injuries.
Stupp, a manufacturer of steel lined pipe, entered into a contract on March 29, 1965 with Carter, a building contractor, whereby Carter was to replace certain existing bolts in Stupp's main plant buildings, crane runways and appurtenant structures. The accident occurred on April 20, 1965.
Stupp filed a third party petition alleging that its contract with Carter provides for the latter to hold Stupp free and harmless against the type of liability urged by Arnold. Said contract provides as follows:
"Charles Carter & Company, Inc. agrees to defend, indemnify and save harmless Stupp Corporation and Stupp Bros. Bridge & Iron Company against any and *799 all liability, damage, costs, fees and other losses of whatever nature on account of any injury to person or persons, or any damage to any property arising out of, caused by or resulting from the sale, handling, loading or use of any materials purchased from Stupp Corporation by Charles Carter & Company, Inc., or caused by or resulting from any business transaction with or work done for Stupp Corporation and/or Stupp Bros. Bridge & Iron Company by Charles Carter & Company, Inc."
Carter and its liability insurer filed a peremptory exception to Stupp's third party petition, which peremptory exception was sustained. On the appeal now before us appellants contend (1) that the trial judge erred in failing to find that the above quoted indemnity agreement covered all liability of appellants, including liability for damages caused by negligence imputable to appellants, and alternatively (2) the lower court erred in dismissing appellees third party demand on a peremptory exception of no cause of action, thereby denying appellants the right to introduce evidence to establish the intent of the parties.
The above quoted indemnity agreement and others similar to it have been the subject of much litigation out of which has evolved, as expected, a general rule with exceptions, including majority and minority adherence.
The general rule is stated thus: "A contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, where such intention is not expressed in unequivocal terms. 27 Am.Jr., Indemnity, § 15, page 464; 42 C.J. S. Indemnity § 12, page 580." The established principle supporting the rule is that general words alone, i. e., "any and all liability", do not necessarily import an intent to impose an obligation so extraordinary and harsh as to render an indemnitor liable to an indemnitee for damages occasioned by the sole negligence of the latter.
The minority view is bottomed on the premise that the words "any and all liability" are unambiguous and the use thereof means just that and the restrictive interpretation adhered to in the majority view is violative of the rule of law that a contract freely entered into, which is not against public policy or prohibited by law, is the law between the parties and subject to judicial recognition and enforcement. 77 A.L.R.2d 1134.
For reasons hereinafter stated we are of the opinion and so hold that Louisiana is committed to the majority view. Motor Sales & Service v. Grasselli Chemical Company, 15 La.App. 353, 131 So. 623; (Orl.App., 1930); Buford v. Sewerage & Water Board of New Orleans, 175 So. 110 (Orl.La.App., 1937); Dorman v. T. Smith and Son, Inc., 55 So.2d 587 (Orl.La.App., 1951); Moore v. Liberty Mutual Insurance Co., La.App., 149 So.2d 192 (3rd Cir., 1963); Brady v. American Insurance Co., 198 So.2d 907 (4th Cir., 1967).
In Motor Sales & Service v. Grasselli Chemical Co., supra, plaintiff sought to recover for property damage to its automobile occasioned by sulphuric acid that was negligently released from drums which were being transported on one of defendant's trucks which was under lease to and being operated at the time by A. J. Peter, a public drayman. Defendant sought to recover judgment against Peter for the amount of plaintiff's judgment by virtue of an indemnity agreement executed in its favor by Peter, which provided in part: (131 So. p. 625)
"* * * I/we hereby agree to hold and save The Grasselli Chemical Company, its agents, officers and employees harmless from any loss, damage or liability which it may suffer, or be about to suffer from any claims, demands, action or causes of action which may be made or had against it by reason of the use, maintenance or operation of said auto trucks, teams or wagons, or by virtue of any accident or injury involving the said *800 trucks, or teams and wagons, or services of the said chauffeur, driver, teamster, or helper; and I/we further agree to protect ourselves and the said The Grasselli Chemical Company by carrying liability and property damage insurance on said trucks or teams and wagons in the amount of $5,000.00." (Emphasis ours)
In rejecting defendant's contention, the court stated: (p. 625)
"* * * The intention of the parties thereto was that Peter should indemnify the Grasselli Company against any loss which might result from his negligence, which, if suffered by third persons, might be legally chargeable to the Grasselli Company. Here the negligence was wholly chargeable to the latter company, and Peter was in no way responsible either directly to plaintiff or to defendant under the indemnity contract above set forth." (Emphasis ours)
In Buford v. Sewerage and Water Board, supra, defendant had entered into a contract with Thomas H. Brockman, whereby the latter was to install certain sewerage mains for the Board. Plaintiff, an employee of Brockman, was injured on the job site through the negligence of defendant. Defendant and Brockman had entered into an indemnity agreement, the pertinent clause of which read as follows: (175 So. p. 112)
"* * * shall fully secure and protect the said Sewerage and Water Board, its legal successors and representatives from all suits or actions of any name or description brought against them or the City of New Orleans for or on account of any injuries or damages received or sustained by any party or parties by or from said Contractor, his servants or agents in the construction of said work, or by or in consequence of any negligence in guarding the same or any improper material used in its construction or by or on account of any act or omission of the said Contractor or agents."
In disposing of defendant's call in warranty of Brockman and sustaining the latter's peremptory exception, the court stated: (p. 112)
"In our opinion, the above stipulation secures and protects the Sewerage and Water Board from all suits or actions brought against it for any injuries or damages received or sustained by any part at the hands of Brockman, his servants or agents, in the construction of the work to be done under the contract. While the language used is not as explicit as it might have been, it is not patently ambiguous, and we are able to deduce that the parties agreed that the Sewerage and Water Board should be held harmless against any suit which might have been brought against it wherein the liability sought to be imposed was attributable to the negligence or fault of Brockman.

There is no provision, appearing in the contract of warranty, which would justify a conclusion that the Sewerage and Water Board was granted any indemnification against the consequences of its own negligence, and it cannot be presumed that such was the intention of the parties, in the absence of a clear and specific stipulation to that effect.

Counsel for the Globe Indemnity Company have furnished us with numerous authorities, all of which are of like tenor with the text found in 31 Corpus Juris, 431, where it is said:

`The established principle is thought to be that general words alone do not necessarily import an intent to hold an indemnitor liable to an indemnitee for damages resulting from the sole negligence of the latter; it is but reasonable to require that an obligation so extraordinary and harsh should be expressed in clear and unequivocal terms.'" (Emphasis ours)
In Dorman v. T. Smith & Son, supra, the indemnity agreement purportedly giving rise to and authority for third party call in *801 warranty provided as follows: (55 So.2d p. 592)
"`7. The party of the second part undertakes to comply with the provisions of the Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927 [33 U.S.C.A. § 901 et seq.] and is to furnish the party of the first part with the property certificate of compliance thereto. The party of the second part shall hold harmless the party of the first part against any claims for death or personal injury of or to the employees of the party of the second part engaged in work under this contract, whether such claim be for compensation or for damages, or for any matter or thing, and/or any third person when such death or injury occurs in or grows out of the loading and/or discharging or is in any way incident thereto.'
`The party of the second part shall also hold harmless the party of the first part against any damage to the property of other persons, where such damage arises out of or is incidental to work under this contract.'" (Emphasis ours)
The Court of Appeal, Orleans, in reversing the trial court's award to intervenor, indemnitee's compensation insurer, based upon the above quoted agreement stated: (55 So.2d p. 592)
"We do not see that, as a result of either of these clauses it can be said that whatever the circumstances the defendant has agreed to make itself liable whenever an employee of the steamship company sustains injuries. Our interpretation of these clauses is that they simply mean that if there is any fault or any legal liability on the part of T. Smith & Son, Inc., as a result of which, liability may be placed upon Alcoa Steamship Company, Inc., then T. Smith & Son, Inc., will hold Alcoa Steamship Company, Inc. harmless and will procure insurance against such liability.

We cannot accept as sound the suggestion that the fact that defendant itself obtained insurance is an indication of a belief that it might be held liable for such an injury. Such insurance is obtained merely for the purpose of protecting the insured against loss where there is liability and cannot be accepted as creating liability which would not otherwise exist." (Emphasis ours)
The court in Moore v. Liberty Mutual Insurance Company, supra, in reversing the lower court's judgment in favor of third party plaintiff, alleged indemnitee's public liability insurer, stated: (149 So.2d p. 195)
"Counsel for appellee, Liberty Mutual Insurance Company, in brief and in oral argument, states that in the case of Metropolitan Paving Company, Inc. v. Gordon Herkenhoff & Associates, Inc., 66 N.M. 41, 341 P.2d 460, the Supreme Court of New Mexico held as did the trial judge in the instant case as to indemnity provisions somewhat similar to those in the contract in the instant case. However, counsel is frank to admit that the rule adopted by the court in that case is a minority rule in this country.

"The dissenting judge in the case of Metropolitan Paving Company, Inc. v. Gordon Herkenhoff & Associates, Inc., supra, said:
"`The rule proposed by the appellant appears in 175 A.L.R. 30 and reads as follows:
"`In the overwhelming majority of the cases the result reached by their interpretational efforts can be condensed into the simple rule that where the parties fail to refer expressly to negligence in their contract such failure evidences the parties' intention not to provide for indemnity for the indemnitee's negligent acts."'" (Emphasis ours)
Also in Brady v. American Insurance Company, supra, which admittedly involved a different type of contract, the court applied the general rule with respect to the contract under consideration and stated: (198 So.2d p. 913) *802 "* * * By no stretching of its language does it appear to become a guarantee to indemnify any party in the event of loss, even more so against loss due to `indemnitee's' own negligence. Unless there be no room for doubt as to the intent of the parties, unless the language be express and unequivocal as to the promise to indemnity, the Courts have considered parties to not have entered into such an agreement. Grigsby v. Coastal Marine Service of Texas, Inc. [D.C.], 235 F. Supp. 97; Buford et al v. Sewerage and Water Board of New Orleans [La.App.], 175 So. 110; Mills v. Fidelity Cas. Co., of N. Y., [D.C.], 226 F.Supp. 786; La.Civil Code Art. 3039." (Emphasis ours)
Particular indemnity clauses were recognized and enforced in Hospital Service District No. 1 v. Delta Gas, Inc., 171 So.2d 293 (La.App.4th Cir., Jan. 11, 1965; rehearing denied, Feb. 8, 1965; writs refused April 15, 1965) and Jennings v. Ralston Purina Co., 201 So.2d 168 (La.App.2d Cir., June 30, 1967; rehearing denied July 27, 1967; writs refused Nov. 6, 1967), which are in fact the only Louisiana cases cited by counsel and the only Louisiana cases our research has also revealed. These cases are clearly distinguishable from the authorities hereinabove referred to and the agreement entered into between the parties therein clearly evidence an intent to indemnify the indemnitee against the latter's own negligence.
In Hospital Service District No. 1 v. Delta Gas, Inc., supra, the court quoted the indemnity agreement under consideration: (171 So.2d p. 300)
"Liberty Mutual's policy, in effect, not only insures Cabirac against liability to others, but also Pittman `without reference to negligence,' to-wit:
`Scope of The Assumed Liability.
"To indemnify and save harmless any indemnitee (Pittman) with respect to liability imposed upon said indemnitee (Pittman) by law, but only to the extent that such liability arises in connection with the operations of the Named Insured (Cabirac) * * * under the Named Insured's contract with the Indemnitee (Pittman) without reference to negligence.'' Names in parentheses and italics added.)"
Buford v. Sewerage and Water Board of New Orleans, supra, was also recognized and clearly distinguished in the opinion which stated: (p. 300)
"* * * In the Buford case there was no agreement on the part of the insurer comparable to Liberty Mutual's endorsement agreeing to protect Pittman `without reference to negligence.'" (Emphasis ours)
The recent case of Jennings v. Ralston Purina Co., supra, involved an action in tort by an employee of a contractor-indemnitor for injuries sustained while working at defendant-indemnitee's plant in Shreveport. Defendant filed a third party claim and urged indemnity rights flowing from the following agreement: (201 So.2d p. 174)
"`Contractor shall protect, indemnify and hold harmless Company (third party plaintiff) from any loss, damage, liability and expense for all injuries, including death to persons or damage to property directly or indirectly arising or growing out of the performance of this Contract except loss or damage that is recoverable under Company's fire and extended coverage insurance. Contractor shall hold Company harmless from and shall answer and defend any action instituted against Company for any loss, damage or injury sustained by any person resulting from the performance of this Contract.
"`Contractor shall carry and maintain such liability insurance as will protect Contractor and Company from claims under any workmen's compensation acts and from any other damages from personal injury, including death, which may be sustained by Contractor's workmen, sub-contractors or any of their servants, *803 agents or employees and the general public, and from claims for property damage which may be sustained by any of them, due to the performance of this Contract. Contractor shall furnish the Company certificates that Contractor has in effect the following insurance.'" (Emphasis ours)

* * * * * *
The case involved the sole negligence of Ralston. In upholding the indemnity agreement and casting the contractor in judgment to the indemnitee for the latter's negligence the court stated: (p. 175)

"Counsel for third party defendants also urgently contends that a contract of indemnity whereby one assumes indemnification against his own negligence must be strictly construed. We have no quarrel with this principle. However, it matters not how strictly we construe the indemnity provision of the contract against Ralston as contractee nor how liberally we might construe the provision in favor of Efurd, the contractor, we cannot conceive of any conclusion which would detract from the clearly quoted, specifically stated and thoroughly comprehensive obligation on the part of Efurd to indemnify Ralston against any damage or injury arising out of the performance of the contract whether or not such damage resulted from Ralston's negligence." (Emphasis ours)
Counsel for appellants here urge that the last above quoted language clearly redounds to their favor and that Jennings is both factually and legally precisely in point with the case at bar. They correlate "any and all liability * * * of whatever nature * * *" in the instant agreement to "* * * any loss, damage, liability and expense for all injuries * * *" found in the Jennings agreement and assert as reasoning therefor the last above emphasized quote from Jennings.
We do not agree with appellants' interpretation of Jennings for several reasons. First, the Jennings decision clearly stated "We have no quarrel" with the general rule that "a contract of indemnity whereby one assumes indemnification against his own negligence must be strictly construed". Secondly, the contract of indemnity in Jennings is clearly distinguishable from the general language in the instant agreement. The general language found in the first paragraph in the Jennings' contract "from all loss" must be considered with reference to the specific exclusion "except loss or damage that is recoverable under Company's (Ralston's) fire and extended coverage insurance". Further, the agreement was specific in that it required coverage for "claims under any workmen's compensation acts and from any other damages * * *". It is clear that the qualification of the general language by these specifics evidenced the intent between the parties as determined by the court. No such qualifying language is found in the instant agreement. To hold otherwise would in effect be saying that Jennings represents a conscious departure from the majority view as enunciated by all of the authorities cited above except Jennings and which have heretofore been considered as settled law.
Appellants, in their remaining and alternative assignment of error urge that in the event this court should determine that the words "any and all liability" as a matter of law do not include liability on account of negligence of Stupp that said words do not exclude liability for negligence of Stupp ambiguously as a matter of law. In other words if the indemnity agreement does not include coverage as urged by them and according to their interpretation then such words are ambiguous and appellants are therefore entitled to present other evidence as to the true intent of the parties. Accordingly, they contend that the trial judge erred in dismissing their third party action on a peremptory exception which precluded the introduction of other evidence to establish the intent of the parties. Appellants cite authorities for the well established proposition that peremptory exceptions should not be maintained where there is any reasonable *804 basis for recovery under a liberal interpretation of the pleadings. With this in mind we turn to appellants' pleadings for the purpose of determining whether or not a liberal interpretation thereof accords them an opportunity to be heard further thereunder.
Article 5 of appellants' answer to the main demand provides:
"Answering paragraph 5 of the petition, defendants admit that Charles Carter & Company, Inc. contracted with defendant Stupp Corporation prior to the date of the accident sued upon, but deny all other allegations of said paragraph.
Further answering said paragraph, defendants aver, allege and plead that the best evidence of the terms and conditions of the contract between Charles Carter & Company, Inc. and Stupp Corporation is the contract itself, a copy of which is attached to the answer as Exhibit `A'." (Emphasis ours)
Article 18, which is part of appellants' third party demand, alleges as follows:
"As is shown by the contract attached to defendants' answer as Exhibit `A', third party defendant Charles Carter & Company, Inc. agreed to indemnify and hold harmless Stupp Corporation from any and all liabilities arising on the premises of Stupp Corporation in the performance of said contract and furnish to Stupp Corporation insurance certificates of Manhattan Fire & Marine Insurance Company, insuring against said liability as is more fully shown by a copy of said insurance certificate and attachment thereto as Exhibits `B' and `C', respectively." (Emphasis ours)
Exhibit "A" contains the work specifications under the contract, Exhibit "B" is a copy of Carter's insurance policy, and Exhibit "C" is the first hereinabove quoted indemnity agreement. Appellants' remaining pleadings are silent as to any other terms or conditions which would lead to any conclusion that the contract is ambiguous or that appellants relied on any evidence other than Exhibits "A", "B" and "C", for in appellants' own words these exhibits are the best evidence of the terms and conditions of the contract between Stupp and Carter. Such pleadings do not support any other interpretation, liberal or otherwise. Appellant very frankly admits in brief that this alternative assignment of error is now first urged before us. For this reason it is also reasonable to assume that in the trial court appellants did not endeavor to avail themselves of the provisions of LSA-CCP Art. 934 which permits the removal of the objection urged in a peremptory exception by amendment to the petition.
Appellants' very forthright argument that "There may be correspondence and other evidence bearing on the true intent of the parties" and that "the lower court effectively foreclosed * * * their right to search for and present evidence in support of their claim" must yield to the clear wording of their pleadings and a liberal interpretation thereof must support the conclusion that there is such evidence.
For the above and foregoing reasons the judgment appealed from is affirmed at appellants' costs.
Affirmed.