216 So.2d 837 (1968)
ELEPHANT, INC., Plaintiff-Appellant,
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY, Defendant-Appellee.
No. 7389.
Court of Appeal of Louisiana, First Circuit.
May 27, 1968.
On Rehearing December 16, 1968.
J. David McNeill, III, Benett & McNeill, Baton Rouge, for appellant.
Gerald L. Walter, Jr., Kantrow, Spaht, Weaver & Walter, Baton Rouge, for appellee.
Before LANDRY, CUTRER and BAILES, JJ.
BAILES, Judge.
This is an appeal by the plaintiff from an adverse judgment of the trial court sustaining a motion for summary judgment. The plaintiff, as the owner of a baby elephant, brought suit against the defendant to recover damages it suffered by reason of the death of the little elephant allegedly precipitated and caused by the actionable negligence of a certain doctor of veterinary medicine, an assured of the defendant.
In its petition, plaintiff alleges that the doctor placed the elephant in a stall in immediate proximity to a large pan of rat poison, or other poisonous substance, and that subsequently he observed that the rat poison was gone from the pan and he knew, or should have known, that the elephant consumed the poison; that approximately one hour after observing that the *838 poison was missing, the doctor observed the elephant experiencing respiratory difficulty; that although observing the elephant in this condition he took no action whatsoever to aid the animal, and that he left the animal alone overnight. It is further alleged that the elephant died within twenty-four hours of this observation, and that the doctor failed to notify the owner thus depriving it of the opportunity to secure timely professional services to alleviate the animal's distress.
The defendant filed a motion for summary judgment, the pertinent grounds set forth therein being:

"3.
"The doctor referred to in plaintiff's petition housed the elephant at no charge to petitioners and petitioners were only obligated to pay for the actual expenses incurred by the doctor in feeding and caring for the elephant.

"4.
"Prior to the occurrence of the incident sued upon, a certain `hold harmless' agreement was executed between petitioners and the doctor of veterinary medicine referred to in the petition. This agreement provided as follows:
`Hold Harmless Agreement
It is hereby agreed by and between Elephant, Incorporated and Dr. ________ that the said Elephant, Incorporated shall hold Dr. ________ harmless from any liability in the event of the death of the elephant, "Sparkle." This agreement is made for and in consideration of professional services rendered and to be rendered to the elephant by Dr. __________

"5.
"Mover now shows that the intent expressed in the agreement as well as a literal reading of the agreement demonstrates that petitioners agreed to hold the doctor harmless for `any liability in the event of the death of the elephant' regardless of the cause of the elephant's death and the said agreement operates as a bar to any recovery herein by petitioners against the said doctor or his insurer.

"6.
"Mover submits that there is no issue as to a material fact and as a matter of law mover is entitled to a motion for a summary judgment since the pleadings, affidavits and stipulations show that petitioners entered into a hold harmless agreement with the doctor which bars any recovery by petitioners herein against the said doctor."
In support of this motion for summary judgment the defendant filed in the record an affidavit of the doctor in which he acknowledged that he furnished housing for the elephant at no charge to the owner except the owner was to repay him the actual expenses incurred in the feeding and housing of the said elephant, and the doctor further deposed that he entered into a "Hold Harmless Agreement" with the owners.
The plaintiff filed an opposing affidavit in which the affiant deposed that the intent and purpose of the hold harmless agreement quoted in defendant's motion was to protect the doctor from liability for the death of the elephant from causes not due to the fault of the doctor and from the hazards to which the elephant might be subject in traveling from place to place in exhibitions.
The record does not contain any reasons of the trial court for sustaining the motion for summary judgment but it appears fair to assume it found that there was no genuine issue of a material fact which finding, if correct, would entitle the defendant to judgment under the provisions of LSA-C. C.P. Article 966.
*839 The defendant contends that the intent expressed in the agreement is clear and free of any ambiguity and that the plaintiff agreed and specified that the doctor would be held harmless from any liability in the event of the death of the elephant regardless of the cause of the elephant's death, and that the agreement operates as a bar of any recovery by the petitioner against the doctor for the alleged negligence of the doctor. Defendant argues that it is certainly obvious that the veterinarian in question might be perfectly willing to care for the elephant at no charge to Elephant, Inc., but unwilling to insure the safety of the elephant or to assume all of the risks attendant to the care of the elephant. Conversely, it is the contention of the plaintiff that it was never the intention of the parties to the agreement to relieve the doctor of liability for his own acts of negligence, that such was not envisioned and under the law of this State is not included as coverage in such an agreement.
A very recent pronouncement of this Court on this subject is apropos, and in fact, controlling of our disposition of this appeal.
In Arnold v. Stupp Corporation (La. App.1967) 205 So.2d 797, Arnold, an employee of an independent building contractor named Charles Carter & Company, brought suit against Stupp Corporation, a manufacturer of steel lined pipe, to recover damages for certain personal injuries he suffered as the alleged result of the use of a defective ladder belonging to Stupp.
"Stupp filed a third party petition alleging that its contract with Carter provides for the latter to hold Stupp free and harmless against the type of liability urged by Arnold. Said contract provides as follows:
"`Charles Carter & Company, Inc. agrees to defend, indemnify and save harmless Stupp Corporation and Stupp Bros. Bridge & Iron Company against any and all liability, damage, costs, fees and other losses of whatever nature on account of any injury to person or persons, or any damage to any property arising out of, caused by or resulting from the sale, handling, loading or use of any materials purchased from Stupp Corporation by Charles Carter & Company, Inc., or caused by or resulting from any business transaction with or work done for Stupp Corporation and/or Stupp Bros. Bridge & Iron Company by Charles Carter & Company, Inc.'
"Carter and its liability insurer filed a peremptory exception to Stupp's third party petition, which peremptory exception was sustained. On the appeal now before us appellants contend (1) that the trial judge erred in failing to find that the above quoted indemnity agreement covered all liability of appellants, including liability for damages caused by negligence imputable to appellants, and alternatively (2) the lower court erred in dismissing appellees third party demand on a peremptory exception of no cause of action, thereby denying appellants the right to introduce evidence to establish the intent of the parties."
This Court stated there that:
"The above quoted indemnity agreement and others similar to it have been the subject of much litigation out of which was evolved, as expected, a general rule with exceptions, including majority and minority adherence.
"[1, 2] The general rule is stated thus: `A contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, where such intention is not expressed in unequivocal terms. Am.Jr., Indemnity, § 15, page 464; 42 C.J.S. Indemnity § 12, page 580.' The established principle supporting the rule is that general words alone, i. e., `any and all liability' do not necessarily import an intent to impose an obligation so extraordinary and harsh as *840 to render an indemnitor liable to an indemnitee for damages occasioned by the sole negligence of the latter.
"The minority view is bottomed on the premise that the words `any and all liability' are unambiguous and the use thereof means just that and the restrictive interpretation adhered to in the majority view is violative of the rule of law that a contract freely entered into, which is not against public policy or prohibited by law, is the law between the parties and subject to judicial recognition and enforcement. 77 A.L.R.2d 1134.
"[3] For reasons hereinafter stated we are of the opinion and so hold that Louisiana is committed to the majority view. Motor Sales & Service v. Grasselli Chemical Company, 15 La.App. 353, 131 So. 623; (Orl.App., 1930); Buford v. Sewerage & Water Board of New Orleans, 175 So. 110 (Orl.La.App., 1937); Dorman v. T. Smith and Son, Inc., 55 So.2d 587 (Orl.La.App., 1951); Moore v. Liberty Mutual Insurance Co., La.App., 149 So.2d 192 (3rd Cir., 1963); Brady v. American Insurance Co., [La.App.,] 198 So.2d 907 (4th Cir., 1967)."
From the quoted portion of the plaintiff's petition it is obvious that the plaintiff is seeking to recover for damages it suffered through the alleged negligent acts of the doctor. This being the case, in the light of our holding in the case of Arnold v. Stupp Corporation, supra, the courts of this State follow the majority rule which is that the general words alone, i. e., "any and all liability" does not necessarily import an intent to impose an obligation so extraordinary and harsh as to render an indemnitory liable to an indemnitee for damages occasioned by the sole negligence of the latter; that such an intention must be clearly expressed in unequivocal words.
Herein the Hold Harmless Agreement says the plaintiff "* * * shall hold Dr. ________ harmless from any liability in the event of death of the elephant, * * *.", which wording clearly brings the agreement within the holding of the majority rule.
Therefore, the judgment appealed from is reversed and the matter is remanded to the trial court for further proceedings according to law and not inconsistent herewith. Defendant is cast for all costs attendant to the motion for summary judgment in both the trial court and this Court.
Reversed and remanded.

ON REHEARING
Before LANDRY, REID and SARTAIN, JJ.
SARTAIN, Judge.
The panel which originally heard and rendered the above opinion elected to grant a rehearing which was asked for by defendant. The purpose of granting this rehearing was the consequence of further reflection on the reasons originally set forth which committed the remand of this case exclusively to the holding of this court in Arnold v. Stupp Corp., supra.
While Arnold v. Stupp Corp., supra, may well ultimately be decisive of the issues presented by the litigants we are of the opinion that the remand should also be based on the fact that the affidavits supporting and in opposition to the motion for summary judgment clearly reflect a difference of opinion with respect to a material issue of fact. CCP Art. 966 et seq.
Defendant in opposing the remand contends that under the particular facts of this case it was error to apply the law as espoused in Arnold v. Stupp Corp., supra, contending that the cited authority deals primarily with indemnity agreements whereas in the instant case we are concerned solely with a "hold harmless agreement" between the two contracting parties.
*841 Defendant in its application urges that the hold harmless agreement is in fact an anticipatory release sanctioned by the case of Forsyth v. Jefferson Downs, Inc., 152 So.2d 369 (4th La.App., June 1, 1963, certiorari refused June 28, 1963). In the Forsyth case the owners of race horses signed an agreement with the defendant that stated that the horses were to be exercised only between certain hours and then at the risk of the owners and that any injury to the exercise boys, jockeys, trainers, or to the horses themselves would be "at our own (owners) risk". There was a clause in the agreement limiting the effectiveness thereof to the time of the day during which the race track was undergoing certain construction. In the original opinion the court held that the agreement therein was not in contravention of public policy for a party to assume the risk of injuring himself or his property in consideration for being allowed to use the premises of the race track. The court also found that "the death of the horse was not occasioned by the repairing of the track, but as a result of negligence outside of the repairs" and awarded damages for the loss of the horse. On rehearing the court determined that the original agreement was in fact in effect at the time of the incident giving rise to the law suit (citing CC Arts. 1945-1947) but, that notwithstanding such agreement, the exercise boy, an agent of plaintiff, who was riding the horse at the time was guilty of negligence contributing to the loss of the animal and his negligence barred recovery by the plaintiff.
We have carefully examined Forsyth v. Jefferson Downs, Inc., supra, and are not convinced that it is authority for what defendant contends is an anticipatory release. Frankly, we have not been able to find any Louisiana case (and none have been cited) that in fact use the terminology "anticipatory release". The language in the Forsyth case which is relied upon by defendant as authority for an anticipatory release is rendered dicta by virtue of the facts upon which the ultimate decision was based.
Be that as it may we are of the opinion that this cause should be remanded because the record clearly evidences a serious difference of opinion with respect to a material issue of fact, to wit: Defendant urges that the agreement represents the clear intention of the parties which constitutes a total release "from any liability in the event of the death of the elephant" and any other interpretation would render the agreement totally meaningless. On the other hand, plaintiff alleged in its petition that other considerations were involved which supplement the written agreement. Concurrently, plaintiff also argues that if the agreement was initially valid it has subsequently fallen for failure of consideration on the part of defendant's assured when the doctor failed to render professional services to the elephant when he knew or should have known that the animal had consumed rat poison.
It would be conjecture on our part at this stage of these proceedings to endeavor to direct the legal channels through which this action must pass. To reiterate, Arnold v. Stupp Corp., supra, may not be controlling because of the dissimilarity of facts, or because of the degree of alleged negligence on the part of defendant's assured, or in the light of our jurisprudence with respect to CC Art. 2926 et seq., dealing with depositary, or for such other reasons as the ultimate facts may dictate.
Accordingly, for the above and foregoing reasons the judgment of the district court maintaining defendant's motion for summary judgment is reversed and set aside and this cause is remanded for a trial on the merits. The cost of this appeal is to be borne by defendant-appellee, all other costs are to await final determination on the merits.
Reversed and remanded.