225 So.2d 776 (1969)
The HOME INSURANCE COMPANY
v.
SOUTHERN SPECIALTY SALES COMPANY, Inc. and West End Marine Garber Manufacturing, Inc.
No. 3598.
Court of Appeal of Louisiana, Fourth Circuit.
July 31, 1969.
*778 Leach, Grossel-Rossi & Paysse, R. A. Redwine, New Orleans, for plaintiff, appellee.
Nicaud, Justrabo, Rousset & Schafer, Thomas E. Schafer, III, New Orleans, for defendant, third-party plaintiff, appellant.
Thomas P. McGee, Metairie, for defendant, third-party plaintiff, appellant.
Before SAMUEL, REDMANN and BARNETTE, JJ.
SAMUEL, Judge.
On or about November 28, 1966 Lloyd J. Rittiner delivered his outboard motor boat, a fiber glass hull, and trailer to Southern Speciality Sales Company, Inc. for minor repairs to the hull. After removing the motor and some accessories, Southern sent the hull and trailer to Garber Manufacturing Company, Inc., d/b/a West End Marine (the correct name of that defendant), for the purpose of having the repairs made. The equipment was lost, presumably stolen, while on Garber's premises, after the repairs had been completed. The Home Insurance Company, insurer of the equipment, paid Rittiner's claim of $1,584.80 for the loss and then instituted this suit for that amount against Southern and Garber under its subrogation from Rittiner. Southern and Garber answered, denying liability. In addition, each of the defendants filed a third-party demand against the other for full indemnity in the event of an adverse judgment.
After trial there was judgment, on the main demand, in favor of Home Insurance and against Southern in the full amount of $1,584.80, with legal interest from date of judicial demand, and for all costs; and in favor of Southern and against Garber in the sum of $1,584.80 on Southern's third-party demand; the Home Insurance demand against Garber and Garber's third-party action against Southern were dismissed. Both Southern and Garber suspensively appealed. Subsequently, we dismissed Southern's suspensive appeal and maintained the same as a devolutive appeal. The Home Insurance Company v. Southern Specialty Sales Company, Inc. and West End Marine Garber Mfg., Inc., No. 3,598 of our docket handed down May 5, 1969 and as yet unreported.
With the exception of the arrangement between Southern and Garber with regard to picking up the boat and trailer after the repairs had been completed, the facts are not in dispute.
Rittiner, who had purchased the equipment from Southern, delivered the same to that defendant for the purpose of having the repairs made. As Southern was not equipped to make the repairs, it requested Garber to make them. Garber, which at that time was doing all of Southern's fiber glass work, was reluctant to accept the work because of the impending Christmas holidays and the fact that, beginning at noon on Friday, December 23, its place of business would be closed for approximately ten days, during which time all of its employees would be out of the state. However, because the repairs were of a minor *779 nature and as Garber's general manager understood Southern would pick up the equipment on or before noon on Friday, December 23, Garber agreed to take the job.
The boat and trailer were delivered to Garber by Southern on December 19. In a conversation by telephone on December 22 Garber's bookkeeper informed Southern's customer service manager the repairs had been completed and requested that Southern pick up the equipment by noon the following day. That afternoon, i. e., December 22, Garber's invoice for the work in the amount of $15 was made out and mailed to Southern. Southern did not pay that bill.
Although one of Garber's employees remained on its premises until approximately 3 p. m. on December 23, Southern failed to pick up the boat and trailer and Garber left the equipment on a side yard next to its building where it customarily kept its own and its customers' similar equipment and where such other equipment was being kept at that time. Between 3 p. m. on December 23 and December 28 the boat and trailer in suit were lost, presumably stolen from the yard.
The side yard on which the equipment had been left by Garber was located on West End Boulevard, a heavily traveled four-lane thoroughfare. That yard was neither fenced nor surrounded by a guard rail or any other means of protection; it was completely open to the boulevard. The equipment was not secured, nor was it guarded or attended, in any manner and Garber was unaware of the loss until after a search following an inquiry made by Southern on December 28. Southern was not aware of the fact that Garber customarily left equipment on an open yard in this manner; nor did it know the boat and trailer in suit had been so left.
The arrangement between Southern and Garber with regard to picking up the equipment after the repairs had been completed is in dispute. The only evidence in the record regarding that arrangement is contained in the testimony of three witnesses: Garber's general manager, its bookkeeper, and Southern's customer service manager.
Garber's version of the arrangement is that it took the job only under the firm assurance by Southern that the latter would pick up the equipment before noon December 23. Southern's position is that it had agreed it would pick up the boat and trailer at the specified time only if it was able to do so; it was not informed, nor did it know, the equipment would be left unattended and unsecured on an open side yard; and it was led to believe only that if the boat and trailer were not picked up on December 23 Southern would not be able to obtain the same until January 3.
It is apparent the trial judge accepted the testimony of Southern's witness, that defendant's customer service manager, and Southern's version of the arrangement. We agree with that conclusion.
In this court Garber contends there is no liability on its part because: (1) it used the same degree of care in preserving the equipment as it used in preserving its own property, which degree of care meets the test of a prudent administrator, its obligation as a depositary; (2) the deposit by Southern to Garber was at the request, and for the sole benefit, of Southern, especially in view of the fact that Garber was never paid for its services, and therefore Garber can be held responsible only for gross negligence, which does not exist; (3) the loss was occasioned solely by the failure of Southern to retrieve the property as agreed, i. e., on or before noon Friday, December 23; and (4) the deposit by Southern to Garber came to an end as of noon, December 23, at which time, because of the agreement between the two defendants, there was a constructive delivery of the equipment to Southern and Garber's obligation ended.
Southern contends: (1) Garber alone is liable to Home Insurance because the record establishes that Southern used all proper care and caution in preserving the equipment while Garber failed to do so; and, *780 in the alternative, (2) the third-party judgment in favor of Southern and against Garber should be amended to include the provisions for legal interest and costs contained in the judgment, on the main demand, in favor of Home Insurance and against Southern.
Our settled jurisprudence is that where the depositor proves the deposit was made and while in the custody of the depositary the property deposited is damaged, lost, or cannot be returned, a prima facie case is established against the depositary and the burden then is upon the latter to exonerate himself from the presumption of negligence or fault. Lumbermens Mutual Casualty Company v. Wallace, La.App., 138 So.2d 247, and cases cited therein.
In the instant case there were two deposits of the hull and trailer, the first by the owner to Southern and the second by Southern to Garber. Here, unquestionably, a prima facie case has been proved by both depositors, the owner and Southern. Each depositary, Southern in the main demand and Garber in Southern's third-party demand, therefore bears the burden of exonerating itself from the presumption of negligence or fault. Neither has carried that burden.
We find no merit in any of Garber's contentions. The obligation of a depositary is to be determined under the applicable provisions of LSA-C.C. Arts. 1908, 2937 and 2938. Although Art. 2937 of the Civil Code does provide that the depositary "* * * is bound to use the same diligence in preserving the deposit that he uses in preserving his own property.", this does not mean that if he is careless in preserving his own property, he may also be careless, without liability, in preserving the deposit. As read together with Civil Code Art. 1908 (which requires that the person who had the thing in his keeping shall take the care of it that could be expected from a prudent administrator), Civil Code Art. 2937 simply means that the depositary must use the ordinary care which may be expected of a prudent man. And under Civil Code Art. 2938, this requirement must be rigorously enforced when the depositary is a compensated depositary.
Contrary to Garber's contention, it, as well as Southern, was a compensated depositary. Each accepted the deposit as an incident of its business by which it intended to make a profit. That Garber's charge for the repairs was not paid is immaterial insofar as the question of whether it was a compensated or a gratuitous depositary is concerned; that status must be determined at the time the deposit was received; and it could hardly expect to be paid for repairs to equipment which had been lost through its fault. Garber's action, in leaving the equipment, which was neither secured nor guarded in any manner, on a side yard completely open to a busy thoroughfare during a period of several days and nights, is obviously so much less than the care to be expected from a prudent man or administrator that Garber's fault need not be discussed further. That appellant's first two contentions are fully answered in the remarkably similar case of Lumbermens Mutual Casualty Company v. Wallace, supra.
Garber's third and fourth contentions, concerning the arrangement between it and Southern relative to the latter picking up the boat and trailer, are based on Garber's version of that arrangement. Quite clearly, under the facts as found by the trial court and by us, there is no merit to those contentions. The arrangement did not relieve Garber of its obligation to take proper care of the equipment while it was in that defendant's custody; that obligation continued; and there was no constructive delivery.
That part of Southern's first contention which is to the effect that it was without fault and therefore is without liability because it used proper care and caution *781 in delivering the boat and trailer to Garber for the purpose of having the repairs made, also is without merit. Southern could not avoid its responsibility as a depositary by having the repairs made by Garber; it was bound, and continued to be bound, to restore the boat and trailer to its depositor despite the fact that the loss was occasioned by the fault of Garber; for under these circumstances the original depositary is responsible and liable to its depositor for the fault of the second depositary. LSA-C.C. Arts. 176, 2317 and 2320; Holder v. Lockwood, La.App., 92 So.2d 768; Paterno v. Kennedy The Cleaner, Inc., 18 La.App. 649, 138 So. 531. While the two cited cases are concerned only with the liability of the depositary for the fault of his employees, the principle is equally applicable where the depositary assigns to his agents, even though they may be independent contractors, the task of performing the work for which the deposit was made.
We do agree with a necessary part of Southern's first contention, that Garber, as well as Southern, is directly liable to the original plaintiff. LSA-C.C. Art. 2934 reads as follows:
"The owner, without whose knowledge the deposit has been made, may reclaim his property in the hands of the depositary, who can not refuse to deliver it, but must call in the person who made the deposit, that he may oppose the restitution." LSA-C.C. Art. 2934.
Under this article and under the authority of Oneto v. Delauny, 6 La. 32, the obligations of the depositary are not due only to his depositor, they are also due to the owner of the property deposited. Accordingly, we will amend the judgment appealed from so as to award the original plaintiff, Home Insurance, a judgment against both defendants, in solido, and so as to award Southern a judgment on its third-party demand against Garber for any amount or amounts of the judgment on the main demand which Southern actually pays, together with legal interest thereon from the dates of such payment or payments, and for all costs expended by Southern in this suit. Such action will satisfy Southern's second contention relative to the propriety of including provisions for legal interest and costs in its third-party judgment, with which contention we agree.
For the reasons assigned, the judgment appealed from is amended so that the judgment on the main demand shall be in favor of the plaintiff, The Home Insurance Company, and against both defendants, Southern Specialty Sales Company, Inc. and Garber Manufacturing Company, Inc., in solido, and so that the judgment in favor of Southern Specialty Sales Company, Inc. and against Garber Manufacturing Company, Inc., on the former's third-party demand against the latter, shall be for any amount or amounts of the judgment on the main demand which Southern Specialty Sales Company, Inc. actually pays, together with legal interest thereon from the dates of such payment or payments, and for all costs expended by Southern Specialty Sales Company, Inc. in this suit. As thus amended, and in all other respects, the judgment appealed from is affirmed; costs in this court to be paid by Garber Manufacturing Company, Inc.
Amended and affirmed.