239 So.2d 692 (1970)
ELEPHANT, INC.
v.
HARTFORD ACCIDENT & INDEMNITY CO.
No. 8064.
Court of Appeal of Louisiana, First Circuit.
June 30, 1970.
Rehearing Denied August 17, 1970.
*693 Gerald L. Walter, Jr., Baton Rouge, for appellant.
William H. Cooper, Jr., Baton Rouge, for appellee.
Before LANDRY, SARTAIN, and ELLIS, JJ.
ELLIS, Judge:
Elephant, Inc. was the owner of a baby elephant known as Sparkle, which was used by it in a political campaign on behalf of a Republican candidate for Congress. Dr. Robert Cane, a veterinarian in Baton Rouge, Louisiana, and a loyal Republication, agreed to house, transport, and care for the elephant at no charge other than the actual expenses incurred therewith. One evening, Sparkle was placed by Dr. Cane in a new stall. In an adjoining compartment separated from the stall only by a slat partition, a quantity of poison was left within reach of the elephant. Sparkle ate the poison and subsequently died as the result thereof. This suit was brought by Elephant, Inc. against Hartford Accident & Indemnity Co., Dr. Cane's insurer, for damages resulting from the death of the elephant. A motion for summary judgment was filed by Hartford, based on the existence of the following agreement between plaintiff and Dr. Cane:
"It is hereby agreed by and between Elephant, Incorporated, and Dr. Robert Cane that the said Elephant, Incorporated shall hold Dr. Robert Cane harmless from any liability in the event of the death of the elephant, "Sparkle". This agreement is made for and in consideration of professional services rendered and to be rendered by Dr. Cane."
The motion for summary judgment was sustained and suit dismissed. An appeal was taken to this court, and we found, on the basis of the affidavits filed in the proceedings, that there was an issue as to a material fact surrounding the execution of the above agreement and remanded the case for trial on the merits. See Elephant, Inc. *694 v. Hartford Accident & Indemnity Co., 216 So.2d 837 (La.App. 1 Cir. 1968).
After trial on the merits, judgment was rendered in favor of plaintiff and against the defendant for $2500.00, which the court found to be the value of the elephant. After motion for a new trial was denied, a suspensive appeal was taken to this court.
The specifications of error are three in number: first, that the court erred in failing to find that Dr. Cane was a gratuitous depositary and as such not liable to the plaintiff in the absence of a finding of gross negligence, willful misconduct, or fraud. Alternatively, it is claimed that the court erred in not finding that the above agreement had the effect of releasing Dr. Cane from liability arising out of his own negligence with respect to the elephant. Finally, it is argued that the court erred in concluding that it was not the intention of the parties to the agreement to release Dr. Cane from liability of the nature sued on.
It is clear from the record that Dr. Cane was negligent in placing the elephant in a stall from which he could easily reach a lethal dose of poison. It is further undisputed that once this particular type of poison was ingested that there was nothing which could be done to save the life of the elephant, so that there is no professional misconduct or neglect on Dr. Cane's part, once he found that Sparkle had consumed the poison.
We find no merit in defendant's contention that a gratuitous depositary can be held liable only in the event of his gross negligence. Articles 1908 and 2937 of the Civil Code fix the burden of care placed on a depositary that of ordinary care which may be expected of a prudent man. Home Insurance Co. v. Southern Specialty Sales Co., 225 So.2d 776 (La.App. 4 Cir. 1969). The case of Pearl Assurance Co. v. De Cuir, 157 So.2d 314 (La.App. 4 Cir. 1963), which appears to be contrary, does not consider the applicability of Article 1908, and relies in part on Olinde Hardware & Supply Co. v. Ramsey, 98 So.2d 835 (La.App. 1 Cir. 1957), which is inapposite. We disagree with its holding, as did the Fourth Circuit, by implication, in the Home Insurance Co. case, supra. In view of this finding, it is not necessary that we determine whether Dr. Cane is a gratuitous or compensated depositary, since a compensated depositary has a higher burden of care under the provisions of Article 2938. When Dr. Cane placed the elephant in a stall from which it could easily reach the poison, he failed to exercise the ordinary care required of him, and would be liable for the death of the elephant, in the absence of other circumstances.
Defendant in this case claims to be exculpated from liability for the death of the elephant by the agreement entered into between Dr. Cane and Elephant, Inc., hereinabove quoted. Plaintiff argues that, as a matter of law, such an agreement can release one from the consequences of his own negligence only when negligence is specifically mentioned in the agreement.
This court has so held in cases dealing with indemnification agreements, as in Arnold v. Stupp Corporation, 205 So.2d 797 (La.App. 1 Cir. 1967). It is pointed out by defendant that the Arnold case, supra, deals with indemnification by one party of another against vicarious liability to third persons, and that our interpretation of such an agreement operates to exclude therefrom cases in which there is direct liability as the result of negligence or a willful tort. It is argued that to place such an interpretation on the agreement in this case would render it meaningless, since liability for the death of the elephant on the part of Dr. Cane can only be predicated on his negligence or fault.
We agree that the Arnold case, supra, should have no bearing on the situation presented here, which involves an agreement between two parties, by virtue of which one of them is purportedly made free from liability if a certain event occurs. The question we must answer is if liability could *695 only arise as the result of negligence, must the agreement contain a specific reference to such negligence in order to be given effect.
Plaintiffs rely on our holding in Plantation Pipe Line Co. v. Kaiser Alum. & Chem. Corp., 222 So.2d 905 (La.App. 1 Cir. 1969) (Writs refused 226 So.2d 522). In that case, there was an agreement by virtue of which plaintiff, who had a servitude over defendant's land, agreed that defendant had the right to "make every use of said lands and premises" and that defendant would "not be liable to Plantation for any loss or damage to said pipe lines resulting from any use of said lands and premises" by defendant. However, in that case, other agreements, subsequently entered into, were found to indicate that it was the intention of the parties to so interpret the above language as to exclude the negligence of defendant from the effect of the agreement. It was further found that defendant's conduct amounted to a willful tort rather than an act of negligence.
When the instant case was first before us, we reversed a summary judgment of dismissal and remanded for trial because we found a dispute as to a material fact. Plaintiff then claimed that other considerations were involved in the case which supplemented the original agreement. Elephant, Inc. v. Hartford Accident & Indemnity Co., supra. The case is now once more before us after trial on the merits, and we find no evidence of any agreements or considerations which would tend to alter or supplement the exculpatory agreement in any way. The only evidence presented is the testimony of the parties to what they thought the agreement meant. Predictably, this supports their respective positions.
In interpreting the agreement, we are required by law to give legal effect thereto according to the true intent of the parties, and that intent is to be determined by the words of the agreement, "when these are clear and explicit and lead to no absurd consequences." Civil Code, Article 1945. A contract should be interpreted so as to give it some effect, rather than to "render it nugatory." Civil Code, Article 1951. We preclude from this discussion any question of willful acts which would not be included in the agreement as a matter of public policy.
In this case, if we give the agreement the interpretation argued for by the plaintiff, it is totally without effect. If the consequences of Dr. Cane's negligence are excluded therefrom, it is a release from nothing at all, and Dr. Cane's position before and after its execution is exactly the same. We do not believe that such could have been the intention of either of the parties thereto. Since liability for the death of the elephant could arise only from the negligence of Dr. Cane, the agreement must be interpreted to release him from the consequences thereof.
The judgment appealed from is therefore reversed, and there will be judgment in favor of defendant and against plaintiff, dismissing plaintiff's suit at its cost.
Reversed and rendered.
SARTAIN, Judge (dissenting).
I cannot subscribe to the conclusion reached by the majority in releasing the defendant from its contractural responsibility to compensate plaintiff for the wrongful death of its elephant. When this matter was first before us (La.App., 216 So.2d 837), we reversed the decision of the trial judge and held that the agreement entered into between Dr. Cane and Elephant, Inc., being couched in such general terms, could not be construed to release Dr. Cane from responsibility for his own negligence. We cited as authority for this proposition Arnold v. Stupp, 205 So.2d 797 (1st La.App., 1967).
An application for a rehearing was granted. Defendant in opposing the remand asserted that we had erroneously applied *696 the rule in Stupp to the facts in the instant case and that the "hold harmless agreement" entered into between the parties did not have the same legal effect as an "indemnity agreement" as found in Stupp. Further, defendant argued that the "hold harmless agreement" was in fact an "anticipatory release" given in anticipation of future veterinary services to be rendered by Dr. Cane.
In the application for a rehearing plaintiff urged that the trial judge erred in dismissing plaintiff's original action on a motion for summary judgment because there was a genuine dispute as to a material issue of fact. For reasons stated at 216 So.2d 840, 841 we remanded the matter for the purpose of considering other considerations that were involved and which purportedly supplemented the written agreement.
At the trial on the merits, it was specifically shown that before Dr. Cane consented to care for the elephant he insisted that plaintiff obtain (1) a life insurance policy on the elephant and (2) a public liability policy to cover any damage or injury that the elephant may cause to persons or property.
These two policies were obtained and the doctor then proceeded to New Orleans to pick up the elephant which arrived by air freight. He had the elephant in his care for some time when he "quite by accident" learned that the owners of the elephant had cancelled the life insurance policy. He immediately requested that he be given some assurance that he would not be held responsible for the death of the elephant. The clear preponderance of the evidence indicates to me that the "hold harmless agreement" upon which the majority hinges its decision was nothing more than an effort on the part of the owners to satisfy Dr. Cane as to his apprehension about being the "life insurer" of the elephant.
Dr. Cane's own testimony was frank and straightforward and significantly omitted any reference to any absolution of responsibility for his own negligence. He stated emphatically that he had every known type of insurance coverage to protect not only himself but animals committed to his charge against claims for his own negligence or injury to the animals by virtue of storm, fire, etc. His testimony in this respect is as follows:
"Q Protection, what do you mean by protection?
A Well, in other words, if an owner stumbles on my front doorstep and breaks a leg, he has insurance protection that I pay premiums on; if I slip with a scalpel and puncture an aorta, this coming in the area of malpractice, I have malpractice insurance; if a burglar steals a poodle at night, that dog is covered by insurance; if the place should burn down or be blown away by a hurricane, I have insurance for this. So, in effect, any possibility of claims on me as a professional veterinarian is covered by insurance. The liability in relation to the elephant to me seemed extraordinary. Wild animals, wild elephants are in a too different category, and it occurred to me that I should protect myself, my estate, my family, and so on and so forth, with an agreement absolving me from any and all claims to be made upon me should anything happen to that elephant. He represented a fair investment which I wasn't about to underwrite.

Q Did you convey  let me ask you specifically. What did you convey to the owners of the elephant and to Mr. McNeill with regard to exactly what your intent was?
A Well, I went down there and I told them, I said (if I can put it in the vernacular), I said, look, I have given you about every professional and logistical support that I can on a voluntary basis; let's effect an *697 agreement absolving me of any dollar claim financial liability at all should the animal expire, in other words, a blanket debt hold harmless agreement. As is usual in insurance companies that underwrite animals' lives, they will write an insurance policy that pays off in case the animal dies, period, it doesn't matter from what." (Emphasis ours)
Witnesses for the plaintiff unequivocally testified that it was the termination of the life insurance policy on the elephant that prompted Dr. Cane to ask for the agreement because in their words young elephants are more susceptible of contacting pneumonia or other diseases that might prove fatal.
The trial judge carefully evaluated and weighed the testimony of each witness and found as a matter of fact that the purpose and intent of the agreement was to supplant the life insurance policy and satisfy Dr. Cane's apprehension about their compensation for the death of the elephant.
We do not have to delve into the legal intricacies of distinguishing between an indemnity agreement and a hold harmless agreement. We have simply to look to this record to determine what the trial judge found to be the true intent of the parties. In my opinion, the majority has reverted to the agreement and concluded, contrary to the findings of the trier of fact, that the agreement is all inclusive and expresses the true intent of the parties because the only liability from which Dr. Cane could be released was his own negligence.
I find it difficult to subscribe to this reasoning and pose the question. "What would have been Dr. Cane's responsibility if the elephant, after consuming the poison, had not died but had become permanently maimed or blinded?" The event, i. e., death, covered in the agreement would not have occurred and Dr. Cane would certainly have been responsible for his negligence.
Ironically, had plaintiff not cancelled the life insurance policy, the agreement would not have been called for and plaintiff could have recovered under both, the life policy and Dr. Cane's liability policy.
I respectfully submit that the decision of the trial judge should be affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
SARTAIN, J., dissents for reasons originally stated.