1 .WILLIAM H. BYRNES III, Chief Judge.
The Orleans Parish School Board (OPSB) seeks review of a judgment rendered on May 15, 2001 denying its motion for summary judgment.
The plaintiffs in these two consolidated cases are the parents of two female students enrolled in the New Orleans Public Schools. One student is legally blind, and the other student is blind and mentally retarded. Francis O’Gara, an alleged employee of the OPSB and/or the Lighthouse for the Blind (the Lighthouse), allegedly sexually molested both girls while ostensibly providing mobility training to the girls pursuant to a contract between OPSB and the Lighthouse. Upon discovering that their daughters had been molested, the mothers of the girls filed separate suits against OPSB, the Lighthouse, and Mr. O’Gara.[1] In one lawsuit the plaintiffs claimed OPSB was negligent in 1) failing to properly supervise the handling of children; 2) negligent hiring and failing to properly screen employees; and 3) negli- ' gently allowing Mr. O’Gara to leave the school premises with a minor child. In the other lawsuit the plaintiffs claimed OPSB was negligent in 1) failing and/or neglecting to protect the minor children from the wrongful and criminal acts of another; 2) failing to provide the minor children with a safe environment; 3) failing and/or neglecting to supervise the children in their custody; 4) failing and/or | .neglecting to identify the risks of harm posed by the children’s interaction with Mr. O’Gara; 5) failing and/or neglecting to investigate the background of personnel who had access to blind and retarded children; 6) failing to properly investigate a prior reported incident of molestation and improper touching which was reported to OPSB; and 7) wanton and reckless disregard for the rights and safety of the minor children by allowing them to be molested and improperly *863 touched while in the care and custody of OPSB.
OPSB and the Lighthouse filed cross claims and cross motions for summary judgment seeking an interpretation of certain indemnity language in the contract for the provision of mobility services that existed between OPSB and the Lighthouse. More specifically, the parties asked the court to decide whether the Lighthouse was obligated to indemnify OPSB for acts of independent negligence allegedly committed by OPSB and/or its employees. Following a hearing, the trial court granted the motion for summary judgment filed by the Lighthouse and denied the. motion for summary judgement filed by OPSB. In its May 15, 2001 judgment the trial court made the following findings:
The Court found that the contracts in question between the School Board and the Lighthouse require the Lighthouse to indemnify the School Board for any acts of negligence or fault committed by the Lighthouse or its employees for which the School Board is found to be liable. The Court further found that the indemnity contracts in question do not require the Lighthouse to indemnify the School Board for any acts of independent negligence committed by the School Board or its employees.
|4The sole issue to be determined in this writ application is whether the trial court erred in finding that the provisions of the indemnity agreements did not obligate the Lighthouse to indemnify OPSB for OPSB’s own independent negligence.
The contracts between OPSB and the Lighthouse contain identical indemnity provisions, which state in pertinent part:
To the fullest extent permitted by the law, the Contractor shall indemnify, hold harmless and defend the School Board, its employees and agents from and against all claims, demands, suits, damages, judgment of sums of money, losses and expenses, including but not limited to attorney’s fees and costs (“Claims”), arising out of the ‘performance of any of the services to be performed pursuant to the terms of this Agreement, provided that any such Claims (i) are attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property including the loss of use resulting therefrom; and, (ii) is [sic] caused in whole or in part by any act or omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder .... [Emphasis added.]
OPSB argues that all of the acts that the plaintiffs allege caused their daughters’ injuries arose out of the performance of services by Mr. O’Gara, who was the employee of the Lighthouse. Thus, all the claims made by the plaintiffs are dependent upon Mr. O’Gara’s conduct. Accordingly, they argue the language of the indemnity clause clearly requires the Lighthouse to defend and indemnify OPSB against all claims made in the two lawsuits. Additionally, they argue that the allegation that OPSB was partly at fault does not affect the Lighthouse’s obligation to defend and indemnify OPSB because the indemnity provisions | ^specifically applies, “regardless of whether or not it [the injury] is caused in part by a party indemnified hereunder.”
Adams v. Falcon Equipment Corp., 30754 (La.App. 2 Cir. 8/21/98), 717 So.2d 282, 287, provides that general words such as “any and all liability” does not necessarily import an intent to impose an obligation so extraordinary and harsh as to render an indemnitor liable to an indemnitee for damages occasioned by the sole negligence *864 of the latter. To the same effect see Stewart v. Winn Dixie Louisiana, Inc. 96-599 (La.App. 5 Cir. 12/11/96), 686 So.2d 907. Stewart contains an excellent and authoritative survey of this issue. We find that the language contained in the contract between the OPSB and the Lighthouse (“regardless of whether or not it is caused in part by a party indemnified hereunder”) coupled with the sweepingly broad “all claims” language clearly and unambiguously entitled the OPSB to indemnification. The contractual reference to the OPSB as “a party indemnified hereunder” goes far beyond and is far more specific than the very general “all claims” language preceding it, bringing it within the ambit of Harris v. Agrico Chem. Co., 570 So.2d 474 (La.App. 5 Cir.1990), cited with approval in Stewart, supra, at 919, while at the same time making the instant case distinguishable from Arnold v. Stupp Corporation, 205 So.2d 797 (La.App. 1st Cir .1967), and other “any and all liability” cases also discussed in Stewart. Stewart explains that:
The established principle supporting the rule is that general words alone, i.e., ‘any and all liability’, do not necessarily import an intent to impose an obligation so extraordinary and harsh as to render an indemnitor liable to an indemnitee for damages occasioned by the sole negligence of the latter. [Emphasis added.]
Id. at 919.
|fiNot only does the indemnity language in the OPSB contracts include a clear and unambiguous reference to the negligence of the indemnitee, in doing so it does not violate the public policy set forth above which finds it harsh to require the indemnification of a party for damage caused by the sole negligence of that party. Consistent with the public policy disfavoring indemnification of a party solely responsible for causation, the OPSB contract refers only to damage caused “in part” by the OPSB. Had the OPSB been solely responsible for causation in this case, following the policy set forth in Stewart, we would rule against the OPSB. However, the indemnification sought by the OPSB under the facts of this case is not nearly so offensive as that frowned upon by the Supreme Court in Stewart. In the instant case the acts of negligence alleged against the OPSB did not necessarily have to result in damage to the plaintiffs. The alleged negligence of the OPSB could be described as secondary to that of the Lighthouse through its offending employee, Mr. O’Gara. While the courts of this state do not distinguish between active and passive negligence when allocating fault, from a policy perspective it is certainly much less offensive to permit the indemnification of the OPSB for its passive negligence when compared to the intentional actions of Mr. O’Gara than it would be were the OPSB seeking indemnification for acts of sole negligence.
For the foregoing reasons, the judgement of the trial court denying the OPSB motion for summary judgment is reversed and judgment is rendered in favor of the OPSB requiring the Lighthouse for the Blind to defend and indemnify the OPSB. This case is remanded to the trial court for further proceedings consistent with this opinion.

WRIT GRANTED; JUDGMENT REVERSED; CASE REMANDED.

. One parent also filed suit against the principal of the public school that her daughter was attending and the insurers of OPSB and the Lighthouse for the Blind.