TRANSCONTINENTAL GAS PIPE LINE CORPORATION, Petitioner-Appellee,

v.

The MOBILE DRILLING BARGE or Vessel Known As MR. CHARLIE etc., Defendant.

SIGNAL OIL & GAS COMPANY et al., Third-Party Defendant-Appellants,

v.

OCEAN DRILLING & EXPLORATION COMPANY, Third-Party Claimant-Appellee,

Forest Oil Corporation et al., Third-Party Defendants-Appellants.

No. 27827.

United States Court of Appeals, Fifth Circuit.

April 6, 1970.

Rehearing Denied May 13, 1970.

A. Yes."

A. Yes.

Q. I think I see what you mean. You interpreted the term accident as the accident of the sale that was made?

A. Yes.

A. Yes.

Q. But, this was not specifically discussed with Mrs. Brown and Mrs. Chase?

A. No."

William R. Eckhardt, Houston, Tex., Paul V. Cassisa, New Orleans, La. for Signal Oil; Bernard, Micholet & Cassisa, New Orleans, La., Vinson, Elkins, Searls & Connally, Houston, Tex., of counsel.

Fletcher Etheridge, Houston, Tex., Robert E. Leake, Jr., New Orleans, La., for Forest Oil Corp., and another; Butler, Binion, Rice, Cook & Knapp, Houston, Tex., of counsel.

Frank M. Bean, Houston, Tex., Bruce J. Borello, New Orleans, La., for Tex. Gas Expl. Co.

Thomas H. Leach, New Orleans, La., Sweeney J. Doehring, Houston, Tex., for Transcontinental Gas Pipe Corp.; Leach, Grossel-Rossi & Paysse, New Orleans, La., Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., of counsel.

George B. Matthews, New Orleans, La., Charles E. Dunbar, III, New Orleans, La., Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for Ocean Drilling and Exploration Co.

Before WISDOM and DYER, Circuit Judges, and CASSIBRY, District Judge.

DYER, Circuit Judge:

This suit arose out of drilling operations being conducted in the Gulf of Mexico when the Drilling Barge "MR. CHARLIE", owned and operated by Ocean Drilling and Exploration Company (ODECO), submerged and came in contact with a Transcontinental Gas Pipe Line Corporation (TRANSCO) 20-inch gas pipe line buried in Block 106 in the Eugene Island Area of the Gulf. TRANSCO brought this suit for injury to its pipe line against the barge "MR. CHARLIE" in rem. ODECO filed claim to it and impleaded Signal Oil and Gas Company (SIGNAL), the lease operator for whom ODECO had been performing the drilling operation under a Drilling and Rework contract.

ODECO also impleaded Forest Oil Corporation (FOREST) et al., the co-owners of the lease with SIGNAL. These co-owners were not parties to the drilling contract with ODECO. There has never been any question either in the trial court or on appeal that TRANSCO is faultless and is entitled to damages; the litigation concerns only the distribution of liability among ODECO, SIGNAL and FOREST, et al.

The issue of damages was severed and the District Court entered an interlocutory decree that:

the Drilling Barge "MR. CHARLIE" *in rem* and the third-party defendant SIGNAL *in personam* are jointly and severally liable to TRANSCO for their concurrent negligence;

the negligence of the barge was minor and that of SIGNAL major and therefore ODECO is entitled to recover from SIGNAL for any sums ODECO is required to pay TRANSCO;

SIGNAL is not entitled to indemnity from ODECO under the terms of the indemnity provisions in the Drilling and Rework Contract between ODECO and SIGNAL; and

the third party complaint of SIGNAL against FOREST et al. is dismissed with prejudice.[1]

We agree that SIGNAL and ODECO were concurrently negligent but find inapplicable any considerations of major-minor fault. We also agree that SIGNAL is not entitled to contractual indemnity from ODECO and that the third-party complaint against FOREST and the other co-owners of the lease was properly dismissed. Accordingly, we reverse the judgment insofar as it re-quires SIGNAL to reimburse ODECO and affirm it in all other respects.

## I.

The parties have assigned as error nearly every aspect of the District Court's order. We deal first with the contentions of SIGNAL and ODECO pertaining to the findings of negligence. Each party claims that the trial court erroneously found it negligent and, in the alternative, that even if it was negligent, its negligence was only minor in comparison with that of the other party and, therefore, the other party should be solely liable for the damage to TRANSCO's pipe line.

The facts relating to this issue are largely undisputed. Prior to 1963 FOREST obtained an oil and gas lease from the United States covering Block 106. FOREST had actual notice of the location of TRANSCO's pipeline in Block 106 at the time it assigned an interest in the lease to SIGNAL and the other third-party defendants. The co-owners of the lease executed a written operating agreement covering the lease and designating SIGNAL as the operator. As operator of the lease, SIGNAL executed a written Drilling and Rework Contract with ODECO[2] under which ODECO was, as an "independent contractor," to conduct the drilling operation out of which TRANSCO's damage arose.

The drilling location was selected by SIGNAL on the basis of geological information and approved by its co-owners on the same basis. At all material times, ODECO, SIGNAL and FOREST had in their possession small-scale maps showing the general location of TRANSCO's line across Block 106. Information as to its exact location was readily

---

1. The District Court also ruled that under the terms of the operating agreement covering the lease on Block 106, FOREST and the other co-owners of the lease are liable to SIGNAL for their proportionate share of any amount SIGNAL is ultimately required to pay under the judgment. The correctness of this ruling is not questioned by any of the parties.

2. The indemnity provisions of this contract are discussed in Part II of the opinion, *infra*.

available as it is a matter of public record reflected on maps and charts on file in various appropriate governmental agencies.[3] No one on behalf of SIGNAL made any check for the existence of pipe lines or other underwater obstructions at the drilling location.

Pursuant to a requirement of the Drilling and Rework Contract between SIGNAL and ODECO that SIGNAL survey, stake and mark the proposed drilling location, SIGNAL hired Surveys, Inc. to plot and buoy the location of the proposed well and to "survey" "MR. CHARLIE" into the proper location for drilling. Mr. Powell, a Surveys Inc. employee, was on board "MR. CHARLIE" the night it was being moved to the drilling location in Block 106 and he directed the barge to that location.

ODECO's director of safety testified that ODECO drilling barges had previously set down on at least a dozen pipe lines of more than 2 inches in diameter within the five or six years preceding the casualty involved in this case, that it was incumbent on the barge mover to find out if there was a pipe line in the drilling area and that he should look at a map before moving into a particular block to put a drilling barge on a drilling location. ODECO had maps of Block 106 in its office.

Vorenkamp, ODECO's barge mover, testified that he did not look at any maps before going on board the barge and that although he had some maps reflecting the location of TRANSCO's pipe line in Block 106 in his briefcase on board the barge, he did not recall looking at them either. He also admitted having personal knowledge that TRANSCO had a pipe line running through Block 106, which encompasses an area of approximately 3 square miles, but that he nevertheless did not know where in Block 106 the drilling location was or where he was when he set down the barge. He relied on Powell, the employee of Survey's, Inc., to get him to the location. The only check Vorenkamp made with respect to the existence of a pipe line at the drilling location came when the barge was en route to the location. He asked the surveyor, Powell, and SIGNAL's drilling foreman who was on board if they knew of any pipe lines in the area and both answered that they did not know of any. Vorenkamp did not ask either Powell or the drilling foreman whether they knew if SIGNAL or Surveys, Inc. had made a check for pipe lines.

SIGNAL argues that it had no duty to check for the existence of pipe lines and that it therefore cannot be held negligent in planning for the drilling of the well. SIGNAL contends that by accepting the responsibility under the contract to drill at a specified location, ODECO assumed any responsibility for mishaps occasioned thereby. ODECO on the other hand, argues that it had a right to rely on SIGNAL's expertise and that it cannot be held negligent because it fulfilled any duties it had when it set the barge down on the precise location called for in the contract. We think each party had a duty which it breached.

Many theories have been advanced in this case to support SIGNAL's and ODECO's contention that only the other of them is liable. For example, the District Court found ODECO negligent by virtue of the presumption of negligence which arises when a moving vessel collides with a fixed object. The parties themselves have resorted to analogy, each side arguing that the relative liabilities of a landowner or architect when a building contractor strikes underground pipes is analogous to the present situation. In view of the nature of the facts in this case, however, we pretermit any consideration as to the pertinency or applicability of either the presumption used by the District Court or the analo-

---

3. Among these agencies are the United States Department of Interior, the United States Army Corps of Engineers, and the Louisiana Department of Conservation.

gy suggested by the parties. That both SIGNAL and ODECO were negligent and that the negligence of each party was a direct and proximate cause of the injury to TRANSCO's pipe line is clear to us from the facts in this record.

There is conflicting testimony in the record concerning whether it is the custom in the industry for the lease operator to inspect for submerged pipe lines and to convey such information to the drilling contractor. Regardless of the existence or absence of such a custom, it is inconceivable to us that a lease operator can plan a drilling site in total disregard of the rights of owners of underground pipe lines. All the pertinent information as to the existence and location of the lines was both in SIGNAL's hands and easily available as a matter of public information. We need not decide to what extent a lease operator must go to fulfill its duty to innocent third parties like TRANSCO because SIGNAL took no steps whatever. Even assuming that the duty not to hit the pipe lines is delegable,[4] SIGNAL did not delegate to ODECO in the Drilling and Rework Contract the responsibility of ascertaining the existence and location of submerged pipe lines. SIGNAL did not even put ODECO on notice that it had made no check for the existence of underwater obstructions or submerged pipe lines.

We need not decide either what extent, if any, a drilling company is justified in relying on the lease operator's selection of the drilling site. In this case Vorenkamp, ODECO's barge mover, went into Block 106 with actual knowledge of the existence of TRANSCO's pipe line and set his barge down without knowing where he was in relation to the pipe line. Vorenkamp asked Powell and SIGNAL's drilling foreman if they knew of any pipe lines in the drilling area and got an equivocal answer from each that they did not know of any. He did not ask if SIGNAL or Surveys, Inc. had made any inquiry, but was apparently content to assume SIGNAL had made such an inquiry notwithstanding that he had the means at hand to make his own independent inquiry.

Although ODECO's negligence was later in time than SIGNAL's we reject SIGNAL's contention that its negligence was merely a condition which made it possible for the subsequent negligence of ODECO to cause the casualty. We think SIGNAL's negligence was also a *cause* of the accident. A prior act of negligence is a proximate cause of an injury despite the occurrence of a second causative act when the second negligent act might reasonably have been expected to occur. W. Prosser, Law of Torts § 51 at 313–14 (1964). Here SIGNAL was negligent in failing to inspect for pipe lines. ODECO's negligence consisted of reliance on SIGNAL's selection of the drilling site. This reliance might reasonably have been expected to occur. SIGNAL's act is thus a direct and proximate cause of the damage to the pipe line.

The District Court correctly held SIGNAL and ODECO jointly and severally liable to TRANSCO for damage to the pipe line.

## II.

Having determined that SIGNAL and ODECO were both negligent and that the negligence of each was a proximate cause of the injury to the TRANSCO pipe line, we turn our attention to the proper distribution of the liability as between SIGNAL and ODECO.

### Major-Minor Fault.

Our first inquiry centers upon the District Court's holding that ODECO's negligence was minor and SIGNAL's major and that, therefore, ODECO is entitled to recover from SIGNAL for any sums ODECO is required to pay TRANSCO. We do not dwell long on

---

4. Since it is not necessary for resolution of this case, we do not decide whether this duty is delegable or not.

this point because we think the major-minor fault doctrine inapplicable to this case.

■■■■ The major-minor fault doctrine is applied in cases involving a collision between vessels to relieve a party whose fault was only technical from the harshness of the divided damages rule. G. Gilmore and C. Black, The Law of Admiralty 402–03 (1957). This ancient doctrine has never been applied in non-collision cases. Halcyon Lines v. Haenn Ship Ceiling and Refitting Corp., 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318; Empire Seafoods, Inc. v. Anderson, 5 Cir. 1968, 398 F.2d 204,[5] cert. denied 393 U.S. 983, 89 S.Ct. 449, 21 L.Ed.2d 444. It may be that the setting down of a submersible drilling barge in such a way that it comes in contact with and damages a submerged pipe line is a "collision" in the technical sense of that word. In our view, though, it does not constitute a "collision" between vessels for purposes of application of the divided damages rule or its corollary, the major-minor fault doctrine.[6]

### *Contractual Indemnity.*

Our second inquiry into the distribution of liability focuses upon the indemnity provisions of the Drilling and Rework Contract under which ODECO was performing the drilling operation for SIGNAL. In Article 3.3(1) of the contract ODECO, as the Contractor, agreed:

> To protect Company [SIGNAL] against liability for damage, loss or expense arising from damage to property or injury or death of any person or persons arising in any way out of, in connection with or resulting from the work provided for hereunder and, without limiting any of Contractor's obligations or liabilities under this contract, Contractor shall, during the progress of the work and throughout the term of this contract, carry and maintain, at its sole expense, in reliable insurance companies * * * the minimum insurance coverages set forth in Exhibit B, annexed hereto and made a part of this contract for all purposes. * * *

Paragraph E of Exhibit B referred to provides:

> Contractor shall indemnify and hold harmless Company and its co-lessees from damages and liabilities of every kind arising out of or being incident to the operations of Contractor hereunder and *resulting from the negligence or willful misconduct of Contractor or its officers, agents or employees.* Contractor shall furnish Company with certificates evidencing coverage insuring *this* hold harmless agreement * * *. Such insurance shall contain an agreement whereby the insurer waives its right of subrogation against Company and its co-lessees. (Emphasis added)

The District Court denied indemnity under the contract provisions on the alternative grounds that (1) ODECO's operations insofar as they appertain to the indemnity clause did not commence until the barge had been properly positioned over the precise spot designated by SIGNAL and submerged thereon in the normal manner, and by the time these

---

5. *Empire Seafoods* found there was a "collision" for purposes of applying the divided damages rule even though a bridge and a vessel, rather than two vessels, were involved. The bridge was treated as if it were another vessel because of the application of the Admiralty Jurisdiction Extension Act, 46 U.S.C.A. § 740, and the Limitation Act, 46 U.S.C.A. § 185.

6. SIGNAL has argued, apart from any questions of indemnity, that the Dis-

trict Court erred in holding it and ODECO jointly and severally liable for the entire damages to TRANSCO and that each party should be only primarily responsible for its fraction of the damages (i. e., one-half) and secondarily responsible for the other party's fraction. However, since we have found no "collision" for purposes of applying the divided damages rule, SIGNAL's argument is inapposite.

events had occurred the damage to TRANSCO's pipe line had already occurred; and, in any event, (2) the indemnity provision does not reflect an intent on the part of ODECO to indemnify SIGNAL for liabilities incurred by SIGNAL as the result of ODECO's reliance upon SIGNAL to properly plan the well location.

We think the operations under the contract insofar as they appertain to the indemnity clause had begun at the time in question. The contract called for payment to begin accruing to ODECO on an hourly basis from the time the barge "MR. CHARLIE" left to go to Block 106. Furthermore, damage caused by the submerging of the barge into the position called for in the contract is a damage "arising out of or being incident to the operations of" ODECO within the meaning of the indemnity provisions.

Finding that the indemnity provisions were in effect at the time of the injury to TRANSCO's pipe line, we turn now to a construction of them to ascertain whether they reflect an intent on the part of ODECO to indemnify SIGNAL under the particular facts of this case. Of course, the construction of a maritime contract is governed by federal, not state, law. E. g., Halliburton Company v. Norton Drilling Company, 5 Cir. 1962, 302 F.2d 431, cert. denied, 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052; A/S J. Ludwig Mowinckels Rederi v. Commercial Steve. Co., 2 Cir. 1958, 256 F.2d 227, cert. dismissed, 358 U.S. 801, 79 S.Ct. 9, 3 L.Ed.2d 49.

SIGNAL urges that under the indemnity provisions ODECO must indemnify it for any damages it pays to TRANSCO, plus fees, costs and interest. The fact that it is a joint tortfeasor should not, says SIGNAL, preclude indemnity under the contract. A/S J. Ludwig Mowinckels R. v. Commercial Steve. Co., *supra,* is relied on for this proposition. There, the shipowner was negligent in improper loading of the cargo. The stevedoring company, with notice of this

fact, was negligent in failing to take adequate steps to insure safe unloading. The indemnity clause in the contract between the shipowner and the stevedoring company provided that the stevedore was to assume responsibility for all damage or injury occurring while loading or unloading through the stevedore's fault. The shipowner was held entitled to indemnity for damages previously paid to an employee of the stevedoring company who had been injured during the unloading. The Second Circuit rejected the stevedore's contention that the indemnity clause should be strictly construed to limit liability for indemnification to those situations where its negligence was alone responsible for the injury and held that, under the provision, full indemnity was required even though the indemnitee and indemnitor were joint tortfeasors.

It may be that the relationship of shipowner and stevedore is such that its very existence is a circumstance from which a court may infer an intent to indemnify even a joint tortfeasor. Cf. Ryan Stevedoring Co. v. Pan-Atlantic S S Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, where the relationship was held to give rise to an implied warranty of workmanlike service on the part of the stevedore even in the absence of an express undertaking to that effect. But even if that relationship was not a factor and *Mowinckels* therefore cannot be distinguished from the case sub judice, we do not find *Mowinckels* persuasive because of the clear precedent in this circuit governing the construction of contractual indemnity provisions.

In Batson-Cook Company v. Industrial Steel Erectors, 5 Cir. 1958, 257 F.2d 410, this court enunciated the rule under Alabama law, which was stated to be the same for the Fifth Circuit, that:

> [W]hile it need not be done in any particular language or form, unless the intention is unequivocally expressed in the plainest of words, the law will consider that the parties did

not undertake to indemnify one against the consequences of his own negligence. *Id.* at 412.

*Batson-Cook* rejected the contention that the all-inclusive language of the indemnity clause—which referred to any and all losses "sustained in connection with or to have arisen out of or resulting from the performance of the work by subcontractor"—reflected with sufficient specificity an intent to impose the extreme obligation on the indemnitor to indemnify the indemnitee for its own negligence:

> The purpose to impose this extraordinary liability on the Indemnitor must be spelled out in unmistakable terms. It cannot come from reading into the general words used the fullest meaning which lexicography would permit. *Id.* at 413.

Although in *Batson-Cook* the indemnitor was not negligent and the damage was caused solely by the negligence of the indemnitee, the rule requiring specificity of the intent to indemnify for the indemnitee's own negligence is equally applicable in situations where, as here, the concurring negligence of the indemnitee and indemnitor causes the damage. *See* United States v. Seckinger, 5 Cir. 1969, 408 F.2d 146, reversed on other grounds 397 U.S. 203, 90 S.Ct. 881, 25 L.Ed.2d 224 [October 13, 1969].

■ Of course, the contract need not contain the talismanic words " 'even though caused, occasioned or contributed to by the negligence, sole or concurrent of the Indemnitee,' " or like expressions, United States v. Seckinger, *supra*; Batson-Cook Company v. Industrial Steel Erectors, *supra*; but it must clearly reflect such a purpose. In this case we do not find anything either in the contract itself or in the realities of the situation from the standpoint of the parties at the time the contract was made, Black Warrior Electric Membership Corp. v. Mississippi Power Co., 5 Cir. 1969, 413 F.2d 1221; United States v. Seckinger, *supra*; which reflects such an intention.

The parties were in an apparently equal bargaining position and SIGNAL drafted the Drilling and Rework Contract. Nevertheless, a reading of Article 3.3(i) and paragraph E of Exhibit B together makes it clear that ODECO agreed to indemnify SIGNAL for all loss arising out of, in connection with or resulting from the drilling work, only *if* "*resulting from the negligence or willful misconduct of Contractor [ODECO]*", and to provide insurance in case of any such negligence by ODECO. The language of the contract simply belies any intent to indemnify SIGNAL for any loss contributed to by SIGNAL's own negligence.[7]

■ The insurance in this case was not intended to cover the specific damage (regardless of fault) as in American Agric. Chem. Co. v. Tampa Armature Works, 5 Cir. 1963, 315 F.2d 856, or to cover the negligence of the indemnitee as in Crescent Towing & Salvage Co. v. Dixilyn Drilling Corp., 5 Cir. 1962, 303 F.2d 237, rev'd on other grounds, 372 U.S. 697, 83 S.Ct. 967, 10 L.Ed.2d 78. Rather, ODECO was to furnish insurance only for its own negligence. Therefore, we find without merit SIGNAL's argument that because the parties negotiated a contract price which reflects that ODECO was to bear the

---

7. SIGNAL also argues that its negligence was only passive, while ODECO's was active and that SIGNAL is therefore still entitled to indemnity. Later in this opinion we hold that both parties were actively negligent. But aside from this holding, considerations of active and passive negligence are inapplicable when dealing with contractual indemnity. Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491; Ryan Stevedoring Co. v. Pan-Atlantic S S Corp., 1056, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; See Miller and Company of Birmingham v. Louisville & N. R. Co., 5 Cir. 1964, 328 F.2d 73, cert. denied, 377 U.S. 966, 84 S.Ct. 1648, 12 L.Ed.2d 737.

cost of liability insurance, the contract also reflects an intention that ODECO bear all the liabilities.

Finding nothing either in the language of the contract itself or in the situation surrounding its making that clearly indicates an intention to indemnify for the indemnitee's negligence, we hold that SIGNAL is not entitled to indemnity under this contract.

### Implied Warranty.

■ ODECO attempts to sustain the District Court's order requiring SIGNAL to pay ODECO any sums it pays to TRANSCO by arguing that this case is analogous to Ryan Stevedoring Co. v. Pan-Atlantic S S Corp., *supra*, where the Supreme Court held that when a shipowner is held liable for injuries to a longshoreman by virtue of an unseaworthy condition of the ship which is the result of the stevedore company's own negligent acts, the shipowner is entitled to indemnity from the stevedore on a theory of breach of implied warranty of workmanlike performance. We do not find the situations at all analogous and, as in the past, we refuse to extend *Ryan* beyond the circumstances in which it arose for the reason that the doctrine is closely tied to the obligation a shipowner owes to those employed on the vessel. Loffland Brothers Co. v. Roberts et al., 5 Cir. 1967, 386 F.2d 540, cert. denied, 389 U.S. 1040, 88 S.Ct. 778, 19 L.Ed.2d 830; Ocean Drilling & Exploration Co. v. Berry Brothers Oil Field Service, Inc., 5 Cir. 1967, 377 F.2d 511, cert. denied, 389 U.S. 849, 88 S.Ct. 102, 19 L.Ed.2d 118; see Smith Petroleum Service, Inc. v. Monsanto Chemical Co., 5 Cir. 1970, 420 F.2d 1103 [January 7, 1970.]

### Tort Indemnity.

ODECO also attempts to sustain the order requiring SIGNAL to make it whole by arguing that its negligence was passive or secondary while SIGNAL's was active or primary. SIGNAL, on the other hand, urges that its negligence was passive and ODECO's was active so that ODECO should be required to indemnify SIGNAL.

■ We disagree with both parties and find the principles of active and passive negligence inapplicable.[8] As indicated in Part I of this opinion, both SIGNAL and ODECO had a primary duty to innocent third parties like TRANSCO and both breached that duty. "As we view the facts, * * * this contention [that indemnity should be allowed on the ground that one party's negligence was active and the other's passive] has no merit. [SIGNAL] and [ODECO] were in pari delicto; each was guilty of acts or omissions which could have proximately caused the [injury complained of]." Smith Petroleum Service, Inc. v. Monsanto Chemical Co., *supra* at p. 1111 of 420 F.2d.

### III.

■ The only question which remains is the propriety of the dismissal of the claims against FOREST and the other co-owners of the lease. ODECO alleged that FOREST had been negligent in failing to notify SIGNAL of TRANSCO's pipe line after FOREST was notified of the proposed well location. It is undisputed that FOREST had actual knowledge of the existence and location of the TRANSCO pipe line. However, the District Court found and ODECO admits in its brief that there was no competent evidence produced at trial as to whether FOREST did or did not notify SIGNAL at any time of the existence or location of the pipe line. Accordingly, there was no evidence from which it could be inferred that FOREST was negligent.

■ ODECO does not take issue with the District Court's conclusion that FOREST and the other co-lessees were

---

8. Tri State Oil Tool Indus., Inc. v. Delta Marine Drill. Co., 5 Cir. 1969, 410 F.2d 178, 180 stated the generally recognized principle, to be "that the right of indemnity exists between parties, one of whom is guilty of active or affirmative negligence, while the other's fault is only technical or passive."

justified in relying on SIGNAL to make careful check for any underwater obstructions. ODECO's only argument is that because FOREST failed to call witnesses within its control who might have testified that FOREST did not notify SIGNAL of the existence and location of the pipe line, ODECO is entitled to a presumption that this would have been the tenor of such testimony. We have dealt with this same problem before:

> Unquestionably the failure of a defendant in a civil case to testify or offer other evidence within his ability to produce and which would explain or rebut a case made by the other side, may, in a proper case, be considered as a circumstance against him and may raise a presumption that the evidence would not be favorable to his position. [Citations omitted].

> It is equally well settled, however, that the failure of a party to testify and the permissible inference to be drawn therefrom will not convert evidence otherwise insufficient into a prima facie case. It will not excuse the failure of the [plaintiff] to meet the burden of establishing facts sufficient to make out a case * * *. United States v. Roberson, 5 Cir. 1956, 233 F.2d 517, 519; accord, The A.L.B. Theatre Corporation v. Loew's Incorporated, 7 Cir. 1966, 355 F.2d 495; Vanity Fair Paper Mills, Inc. v. F. T. C., 2 Cir. 1962, 311 F.2d 480; United States v. Cherkasky Meat Company, 3 Cir. 1958, 259 F.2d 89; Eckenrode v. Pennsylvania R. Co., 3 Cir. 1947, 164 F.2d 996; Robins Dry Dock & Repair Co. v. Navigazione Libera Triestina, 2 Cir. 1929, 32 F.2d 209.

There can be no inference here because neither ODECO nor TRANSCO introduced any evidence on the issue of FOREST's negligence (or the negligence of the other co-lessees).

We have considered the other contentions of the parties and find them either without merit or unnecessary to resolve in light of our disposition of the case.

The interlocutory decree of the District Court is REVERSED to the extent that it requires SIGNAL to reimburse ODECO for any sums paid by ODECO to TRANSCO. It is AFFIRMED in all other respects.

Reversed in part and affirmed in part.