Mitchell B. JURISICH, Plaintiff,

v.

UNITED GAS PIPE LINE CO.,
Defendant.

Civ. A. No. 71–2477.

United States District Court,
E. D. Louisiana.

Aug. 25, 1972.

Gerald J. Martinez, Everhardt & Martinez, Metairie, La., for plaintiff.

John Charrier, Jr., Jones, Walker, Waechter, Paitevent, Carrere, & Denegre, New Orleans, La., for defendant.

ALVIN B. RUBIN, District Judge:

Jurisich seeks damages to his oyster lease incurred when United Gas boats and equipment crossed the lease to make repairs to the company's gas pipeline at a point outside the lease.

The State of Louisiana owns the beds of navigable lakes and streams in the state. La. C.C. Art. 453. It leases these for various purposes, including the production of oysters, LSA–R.S. 56:424. Jurisich had such a lease, No. 18407, located on the bottom of the waters of Bayou Cherie, Plaquemines Parish, Louisiana.

When United Gas planned its pipeline in 1960, it purchased from the State "a right of way and easement" across the property leased to Jurisich. In addition, it made a contract with Jurisich. In return for a payment of $5,000, he granted United Gas "the right to construct, operate, maintain, repair, replace, relocate and remove one or more pipelines for the transportation of gas, oil, other substances or commodity [sic] at a route to be selected by [United Gas]" over the Jurisich lease.

The contract specified that the payment was made to compensate for damages to be incurred in the future, stating:

"Grantors specifically acknowledge that the consideration paid concurrently with the execution of this agreement, represents full compensation to them for the actual value of the said oyster leases and all oysters situated thereon and all improvements and materials thereon, *and further is an amount which includes payment for any and all damages, present, future or prospective, which they now have or might hereafter have by virtue of their ownership of said oyster leases,* or any renewals or extensions thereof, or any new leases which they may require in the vicinity of Bayou Cherie,

*as a result of the operations of grantee* as hereinabove described." (Emphasis supplied.)

The pipeline was laid without incident. Ten years later, it became necessary to repair it at a point located outside the Jurisich lease. There is some dispute about whether it was necessary to cross the Jurisich lease to reach that point, but at any rate United Gas found it convenient to do so by placing its repair equipment on barges, and leasing a marsh buggy drag line from another firm to be used in making the repairs.

For present purposes, it must be taken as established that this floating equipment crossed the Jurisich lease and that damage to his oysters resulted, although these issues are in fact controverted. Jurisich seeks to recover for these alleged damages. United Gas contends that it has no liability for them because it has in effect already paid for them—ten years ago.

## I. ENFORCEABILITY OF THE AGREEMENT

Admiralty jurisdiction "comprehends all maritime contracts . . . [this] extends over all contracts (wheresoever they may be made or executed, or whatsoever may be the form of the stipulations,) which relate to the navigation, business or commerce of the sea. . . ." De Lovio v. Boit, 1815, 7 Fed.Cas. pp. 418, 444, No. 3,776. Hence the validity of a maritime contract is determined by admiralty law. Under general maritime law, a party may enter into an agreement for indemnity from future liability, Sun Oil Co. v. Dalzell Towing Co., 1932, 287 U.S. 291, 53 S.Ct. 135, 77 L.Ed. 311, cf. Bisso v. Inland Waterways Corp., 1955, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911, holding invalid a release from liability clause in a towage contract. Admiralty appears to have no policy that would preclude a person from agreeing to accept a payment determined in advance for damages not yet incurred. The gain or loss therefrom is aleatory, but the law of the

sea deals in many instances with contracts made with respect to unknown future events. No claim is made that the payment was inadequate, that the contract was oppressive, or that it was negotiated other than at arm's length as a result of bargaining between persons each able to look after his own interests. Hence the agreement appears to be valid under maritime law.

If we look to Louisiana law, the result is the same. In Elephant, Inc. v. Hartford Accident & Indemnity Co., La.App., 1 Cir. 1970, 239 So.2d 692, an agreement to hold a party harmless from liability in the event of a future occurrence was held valid.

The agreement being valid, it must at least foreclose liability for any acts done with reasonable care by United Gas.

## II. CONTRACT INTERPRETATION: DOES THE AGREEMENT BAR CLAIMS BASED ON NEGLIGENCE?

 Whether the agreement goes further and bars claims based on United Gas' negligence depended on the interpretation of the agreement. In admiralty, The Dow Chemical Co. v. Dixie Carriers, Inc., 5 Cir. 1972, 463 F.2d 120; Lanasse v. Travelers Insurance Co., 5 Cir. 1971, 450 F.2d 580, 584, cert. denied, Chevron Oil Co. v. Royal Ins. Co., 1972, 406 U.S. 921, 92 S.Ct. 1779, 32 L. Ed.2d 120 [1972], as in Louisiana, Elephant, Inc. v. Hartford Accident & Indemnity Co., supra, 239 So.2d at 695, a party may contract against liability for his own negligence. But in both bodies of law, such an agreement must clearly indicate the intention of the parties. In indemnity situations, for example, it will not be presumed that a mere agreement to indemnify includes indemnity for the indemnitee's own negligence, United States v. Seckinger, 5 Cir. 1969, 408 F. 2d 146, 150; Batson-Cook Co. v. Industrial Steel Erectors, 5 Cir. 1958, 257 F.2d 410, 413; for Louisiana references, see Arnold v. Stupp Corp. (La.App. 1967), 205 So.2d 797; Brady v. Ameri-

can Insurance Co., La.App. 4 Cir. 1967, 198 So.2d 907, although such indemnity will be enforced if expressed with sufficient clarity to indicate this was the parties' true intention. Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge, 5 Cir. 1970, 424 F.2d 684, 691; United States v. Seckinger, *supra*; for Louisiana references see *Arnold* and *Brady, supra*; see also Moore v. Liberty Mutual Insurance Co., La. App., 3 Cir. 1963, 149 So.2d 192.

 United Gas knew that its pipeline would need repairs from time to time. Such repairs, however carefully executed, might entail damage to oysters. Hence there was reason for it to wish to buy peace from claims arising from such damage. But the possibility also existed that it might be negligent in its repair operations; it might inflict needless damage on oysters located far from its lines. Nothing on the face of the contract indicates that United Gas purchased insulation from claims for its negligence.

There is a clear distinction between the present case and that of the *Elephant, supra*. There the contracting party would have been liable for the elephant's death *only* if he were negligent. Hence the only interpretation that would give the contractual release meaning was to construe it to include liability for negligence. Here United Gas would have been responsible for oyster damage even if it were not negligent; the contract can be given meaning without making it exclude recovery for negligence.

The intention of the parties may become an issue for the jury. 6 Moore's Federal Practice ¶56.17[ii]. This opinion does not foreclose that issue. But, on motion for summary judgment, it cannot be said that there is no genuine issue of material fact as to the interpretation of the agreement as it might relate to the negligence of United Gas. For these reasons, the motion for summary judgment as to claims based on negligence is denied.