Alisa D. JOHNSON, Plaintiff-Appellant,

v.

DELCHAMPS, INC.,
Defendant–Appellee.

No. 87–3385.

United States Court of Appeals,
Fifth Circuit.

June 9, 1988.

Rehearing and Rehearing En Banc
Denied July 20, 1988.

J. Arthur Smith, III, Baton Rouge, La., for plaintiff-appellant.

Frederick Preis, Jr., Robert B. Mitchell, Richard M. Moyed, New Orleans, La., for defendant-appellee.

Before GARZA, REAVLEY and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The plaintiff appeals a summary judgment dismissing her diversity tort action. We reverse and remand.

I.

Alisa D. Johnson was employed as a cashier at a Delchamps, Inc. grocery store in Baton Rouge, Louisiana. When the store experienced inventory shortages, management asked Johnson and other employees to take a polygraph examination. Before the July 22, 1986 examination began, Johnson signed an instrument that purported to release and hold harmless Delchamps from any damages she might suffer as a result of the administration of the examination.[1] The polygraph operator con-

---

1. The document provided, in pertinent part:

I, Alisa Denise Johnson, voluntarily ... agree and stipulate to take a polygraph examination

cluded that Johnson responded deceptively to a question regarding whether she had given away store merchandise. Delchamps fired Johnson.

Johnson filed a tort action alleging that a Delchamps employee negligently administered the polygraph examination and caused her injury. Prior to any discovery, Delchamps filed a motion for summary judgment based on Johnson's purported release of Delchamps for future tort liability. The district court, relying heavily on *Battig v. Hartford Accident & Indem. Co.*, 482 F.Supp. 338, 343 (W.D.La.1977), *aff'd on other grounds*, 608 F.2d 119 (5th Cir.1979), granted Delchamps' motion for summary judgment on grounds that the release Johnson signed before taking the polygraph examination constituted a valid remission of debt under Louisiana Civil Code article 1888. Johnson appeals the district court's' summary judgment.

## II.

■ The parties agree that Delchamps gave no consideration to Johnson for her agreement to sign this purported release. As a result of this concession, Delchamps' alternative argument that the document constituted a binding transaction or compromise pursuant to Louisiana Civil Code article 3071 must fail because that article requires consideration before the compromise will be enforced. Delchamps offers no other theory that will support enforcement of this document in the absence of

consideration. As a result, the document has legal effect only if it qualifies as a gratuitous remission under article 1888.

## III.

Johnson argues on appeal that Louisiana Civil Code article 1888 does not provide for the release of future tort liability. Article 1888 states: "A remission of debt by an obligee extinguishes the obligation. That remission may be express or tacit." La. Civ.Code Ann. art. 1888 (West 1987). Johnson argues that there was no "debt" for her to remit at the time she signed this document because the examiner had not yet negligently administered the polygraph and injured her.

Delchamps argues, on the other hand, that at the time Johnson signed the release it was indebted to her in the sense that it was "obliged" to act with due care in administering the polygraph examination so as not to injure Johnson. Delchamps contends and we agree that debt and obligation are generally synonymous.[2] Delchamps argues that Johnson remitted Delchamps' debt to act with due care when she signed the release before taking the polygraph examination. Delchamps concludes that Johnson's remission extinguished its obligation to act with due care; in the absence of any obligation to act reasonably, Delchamps contends it is not liable for damages arising from its negligent conduct.

... for the mutual benefit of myself and Delchamps, Inc. I fully realize that: I am not required to take this examination, ... I am fully aware that the expert opinion may be that I have not been truthful. Notwithstanding such, in consideration of and as an inducement for Delchamps, Inc. to give me this polygraph examination, I ... knowingly hereby release ... and hold free from all harm, liability, or damage whatsoever Delchamps, Inc. ... from any and all suits, actions or causes of action at law, claims, demands, or liabilities either at law or in equity ... resulting directly, indirectly or remotely from my taking said examination.

The sentence directly above Johnson's signature states:

*IMPORTANT NOTICE:* This agreement and release form a legally binding contract. If not completely understood, do not sign but

seek advice, such as that rendered by an attorney.

**2.** The authors of two major treatises on the civil law agree with appellee on this point. Planiol wrote: "The relationship as a whole is called 'obligation,' considered specially from its passive aspect it takes the name of debt and from its active aspect the name of credit. But the word 'obligation' is often used in a narrow sense, as the synonym of debt." 2 M. Planiol, *Treatise on The Civil Law* No. 157 (11th ed. 1939) (Louisiana State Law Institute translation). Aubry and Rau agreed: "[T]he obligation and its correlative personal right are called respectively, debt and credit." IV C. Aubry & C. Rau, *Cours de droit civil francais* § 296, at 2 (6th ed. 1965) (Louisiana State Law Institute translation).

■ The argument of the parties requires us to determine whether Delchamps was obligated or indebted to Johnson as contemplated by article 1888. "Obligation" is defined in article 1756 as "a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee. Performance may consist of giving, doing, or not doing something." The Code also lists sources of obligations: "Obligations arise from contracts and other declarations of will. They also arise directly from the law, regardless of a declaration of will, in instances such as wrongful acts, the management of the affairs of another, unjust enrichment and other acts or facts." *Id.* art. 1757.

The official comments to article 1756 provide that "an obligation is a legal relationship rather than a mere duty to perform." *Id.* art. 1756 comment (b). That legal relationship is a juridical tie or bond between parties that gives them reciprocal rights and responsibilities. Minutes of Saturday Council Meeting of the Revision Committee, Louisiana State Law Institute (June 25, 1977).[3] *See generally* La.Civ.Code Ann. arts. 1756–2291 (West 1987). The question for decision in this case narrows to whether the relationship between a future tortfeasor and a potential victim is such a tie or bond that the potential tortfeasor has an *obligation* to act with reasonable care rather than a mere *duty* to do so.

We conclude that the requirement of Louisiana law that a person exercise reasonable care to avoid injuring another is a duty and not an obligation. An obligation arises only after the tort is committed and the victim is injured. We draw support for this conclusion from several sources. First, article 1757 provides that a wrongful act may be the source of an obligation. Thus, it is the breach of the duty to exercise reasonable care—the wrongful act— that gives rise to the obligation. This is consistent with Planiol's writing on the source of obligations.

The "source" of an obligation is the act which produces it. Thus, it is said that an obligation has a contract as its source when it results from a sale, a loan, a hiring, etc., or that its source is an offense when it arises from the damage which has been caused voluntarily to another (fire, personal injury, defamation, etc.).

2 M. Planiol, *Treatise on The Civil Law* No. 805 (11th ed. 1939) (Louisiana State Law Institute translation).

Article 2315 also suggests that an obligation arises only after a tort is committed: "Every *act* whatsoever of man that *causes damage* to another *obliges* him by whose fault it happened to repair it." La.Civ. Code Ann. art. 2315 (West Supp.1988) (emphasis added). It is also instructive that article 2315 creates a right of action in favor of tort victims only after the victim suffers injury or damage. Thus, before the tort occurs and the victim sustains injury, the future tortfeasor and his potential victim have no particular ties. Once the victim is injured by the commission of the tort—the breach of the duty to act with due care—the two are drawn together into a "legal relationship." *See* art. 1756.

Finally, Planiol considered that delictual obligations arise only after the tort is committed. "The law imposes an obligation when [one] cause[s] damage to another; it obliges the author of them to repair the damage which he has caused. They can therefore be defined as 'illicit acts causing damage to another.' " 2 M. Planiol, *supra*, No. 806.

The district court relied on *Battig*, 482 F.Supp. 338, in holding that Louisiana law permitted the gratuitous release of future tort liability. In *Battig*, the district court addressed the scope and enforceability of a release clause in an application for admission to St. Mary's School for Retarded Children. The court determined that Louisiana law allowed for the release of future liability, *id.* at 343 (citing *Hayes v. Hayes*, 8

---

**3.** The Louisiana State Law Institute, "as the official advisory law commission of the State of Louisiana, shall direct and supervise the continuous revision, clarification and coordination of Louisiana Revised Statutes...." La.Rev.Stat. Ann. § 24:251, :251– :256 (West 1975 & Supp. 1988).

La.Ann. 468 (1852)), and found that the language in the application was sufficiently broad to indicate an intent to release liability.

*Battig* is distinguishable from the instant case because the Battigs apparently received consideration in exchange for the release. Also, although the court cites the remission article, it is unclear whether the decision is grounded there or in general contract law. To whatever extent *Battig* is inconsistent with this opinion, we disagree with its holding.[4]

For these reasons we conclude that article 1888 does not provide for the gratuitous remission of potential tort liability before the tort is committed and the damage is sustained. Accordingly, the judgment of the district court is reversed, and the case is remanded for further proceedings.

REVERSED and REMANDED.

---

**4.** No appeal was taken from the district court's determination that the release was binding, so the Fifth Circuit opinion sheds no light on the issue now before us. *See Battig,* 608 F.2d 119.